IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIGNEX DATAMATICS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) C.A. No. 17-320 (MN) <br> LAM RESEARCH CORPORATION, ) <br> ) <br> Defendant. ) <br> ) <br> ) | |

# MEMORANDUM OPINION

Christopher P. Simon, David G. Holmes, CROSS & SIMON, LLC, Wilmington, DE – attorneys for Plaintiff

Theodore A. Kittila, James G. McMillan, III, HALLORAN FARKAS + KITTILA LLP, Wilmington, DE – attorneys for Defendants

February 26, 2019
Wilmington, Delaware

*[signature: Maryellen Noreika]*

NOREIKA, U.S. DISTRICT JUDGE:

This case arises out of a contract dispute between Plaintiff Cignex Datamatics, Inc. ("Plaintiff" or "Cignex") and Defendant Lam Research Corporation ("Defendant" or "Lam"). Presently before the Court is Lam's motion for "summary judgment finding against CIGNEX on its Complaint." (D.I. 74, 75). For the reasons set forth below, Defendant's motion for summary judgment is GRANTED-IN-PART and DENIED-IN-PART.

I. **BACKGROUND**

Cignex "is a commercial open-source consulting company that provides a wide variety of clients with services and products such as open source enterprise portals, content management, big data analytics, and e-commerce solutions." (D.I. 1 ¶ 5). Lam "is in the business of designing, developing, marketing, selling and supporting equipment that is used by semiconductor manufacturers to make semiconductor chips. As part of its business, [Lam] operates numerous computer and software platforms, which are integral to its business." (D.I. 8 at 4). Lam has a website, www.mylam.com, on which it "provides secure, online access for its personnel, customers and technicians to its library of technical manuals and other proprietary documents related to its products." (D.I. 75 at 1-2). In October of 2014, Lam and Cignex entered into a "Contract for Independent Contractor or Consultant Services" ("the Agreement") for Cignex to "work on the overhaul and development of the MyLam.com portal." (D.I. 77 at 3).

The Agreement was apparently a standard form agreement provided by Lam to its vendors. Section 1 of the Agreement states, "The Description of Work . . . describes the services that the Contractor will perform and the fees which Company will pay in return." (D.I. 75-1 at App 11). Section 2 of the Agreement states, "[Cignex] will begin work on the date written above and, unless terminated sooner, the Contract will end when the services are completed, as shown on Exhibit

A." (*Id.*). Exhibit A of the Agreement – Description of Work – "describes the services that [Cignex] will perform and the fees which [Lam] will pay in return." (*Id.*). Exhibit A contains the notation "Software Integration, and POC, for MyLam/PK Redesign Project," indicating that Cignex was to do work for the MyLam/PK Redesign Project. (D.I. 75-1 at App 15). The remainder of the exhibit, including the signature blocks, is blank. (*Id.*).

Pursuant to the Agreement, Cignex prepared a "proof of concept" for the project. (D.I. 75 at 2). Lam paid Cignex $10,000 upon completion of the proof of concept. (*Id.*). Thereafter, in consultation with Lam, Cignex prepared a Statement of Work, which Lam signed on January 16, 2015 and Cignex signed on January 19, 2015. (D.I. 75-1 at App 31-48). The Statement of Work outlined the scope of work that Cignex would perform for Lam. On the first page, it refers to "Terms and Conditions" as "Time and Material." (D.I. 75-1 at App 31).

During the contract period, Cignex invoiced Lam on a monthly basis for work and materials, and in response to invoices, Lam paid more than $665,000. There were numerous problems and delays in the project (though which party is at fault is disputed). At some point, however, Lam expressed dissatisfaction with Cignex's work and stopped paying. Even after Lam stopped paying, Cignex continued to work with Lam on the project. Ultimately, Lam severed the relationship and refused to pay the outstanding amounts due. Cignex brought this suit to recover a balance of $434,096.71 due to it for work performed, and Cignex also seeks interest and attorneys' fees. (D.I. 1 at 4). Lam counterclaimed, seeking to recover the amounts already paid to Cignex. (D.I. 8). Lam now seeks summary judgment on Cignex's breach of contract claim. (D.I. 75).

**II.      LEGAL STANDARDS**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact is not – or is – genuinely disputed must be supported by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment" – a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

#### A. Claim for Breach of Contract

The thrust of the dispute for summary judgment is whether the totality of the agreement between the parties (including the Agreement with exhibits, proof of concept and Statement of Work) required completion of the project before payment was due or whether it was a time and materials contract pursuant to which Cignex would be paid for labor and expenses incurred. Lam asserts that the Agreement "expressly and unambiguously obligates CIGNEX to complete the Project." (D.I. 75 at 9). Lam notes that "Section 1 of the Agreement states, 'The Description of Work . . . describes the services that the Contractor will perform and the fees which Company will pay in return'" and that Exhibit A, which contains the "Description of Work," contemplated completion of software integration for the project. (*Id.*). In Lam's view, Cignex did not complete the project and, thus, Lam is not required to pay Cignex. Cignex, on the other hand, asserts that the agreement is a time and materials contract under which it would be paid for labor and expenses incurred during the project. Cignex points to provisions in the Statement of Work and to the parties' course of dealing to support its argument.

4

In addressing issues of contract interpretation, the Court must "give effect to the plain-meaning of [a] contract's terms and provisions." *LCY Chemical Corp. v. Kraton Performance Polymers, Inc.*, No. 14-1279 (GMS), 2015 WL 4486783, at *2 (D. Del. July 23, 2015) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010)). If contractual language "is plain and clear on its face, i.e., it[] . . . conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent." *Choupak v. Rivkin*, No. 7000 VCL, 2015 WL 1589610, at *18 (Del. Ch. Apr. 6, 2015) (quoting *City Investing Co. Liquid. Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993)). If, however, the terms are ambiguous, extrinsic evidence may be considered to determine the parties' intentions. *See AT&T Corp. v. Lillis*, 953 A.2d 241, 253 (Del. 2008). Ambiguity exists "when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Markow v. Synageva Biopharma Corp.*, No. N15C-06-152 WCC, 2016 WL 1613419, at *5 (Del. Super. Ct. Mar. 3, 2016) (internal quotations omitted). When provisions of a contract are ambiguous, "factual issues requiring consideration of extrinsic evidence to determine the intended meaning of the provision in light of the expectations of the contracting parties" preclude summary judgment. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1229 (Del. 1997).

Here, the contract terms are ambiguous and factual issues preclude the grant of summary judgment. Indeed, as the parties have pointed out, there are references to both time and materials and suggestions of completion of the project in the various documents. Moreover, the extrinsic evidence, including testimony from the parties' representatives and the course of conduct between the parties raises issues of fact as the parties' expectations.

**B.     Charge for Alfresco Subscription**

Cignex's claim for $434,096.71 includes a $58,000 charge for a subscription for Alfresco software. (D.I. 75-1 at App 230). Lam asserts that Cignex has not proven breach for failure to pay the Alfresco charge. In its Answering Brief (D.I. 77), Cignex offers no response – and in fact never mentions Alfresco. The undisputed evidence before the Court is that Cignex is not a party to the licensing agreement between Alfresco and Lam (D.I. 75-1 at App 280-283) and that Lam was not obligated to pay Cignex for Alfresco. Moreover, there is no evidence that Cignex paid the $58,000 despite invoicing that amount to Lam. Based on these undisputed facts, the Court will grant Lam's request for summary judgment that Cignex cannot recover the $58,000 based on the alleged Alfresco license fee.

An appropriate Order will follow.