IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIGNEX DATAMATICS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 17-320 (MN) |
| ) | |
| LAM RESEARCH CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Theodore A. Kittila, James G. McMillan, III, HALLORAN FARKAS + KITTILA LLP, Wilmington, DE – attorneys for Plaintiff

Christopher P. Simon, David G. Holmes, CROSS & SIMON, LLC, Wilmington, DE – attorneys for Defendants

March 11, 2019
Wilmington, Delaware

*signature: Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion of Defendant Lam Research Corporation ("Defendant" or "Lam") for a finding of spoliation and for sanctions against Plaintiff CIGNEX Datamatics, Inc. ("Plaintiff" or "CIGNEX"). (D.I. 54). For the reasons set forth below, the Court DENIES Lam's motion.

I.  **BACKGROUND**

CIGNEX is a consulting company that provides "services and products such as open source enterprise portals, content management, big data analytics, and e-commerce solutions." (D.I. 1 ¶ 5). On October 28, 2014, CIGNEX and Lam entered into a Contract for Independent Contractor or Consultant Services ("the Agreement"), whereby CIGNEX agreed to provide software development services for Lam's MyLam/PK redesign project. (*Id.* ¶ 6; *see also* D.I. 1, Ex. A). The Agreement provided that, in exchange for CIGNEX's work on the MyLam/PK redesign project, Lam would pay certain fees to CIGNEX according to the relevant Statement(s) of Work. (D.I. 1 ¶ 6, *see also* D.I. 1, Ex. A ¶¶ 1-2). The Agreement also provided that Lam would pay CIGNEX within thirty days of each undisputed invoice for the project. (D.I. 1, Ex. A ¶ 4). In January 2015, both parties signed a Statement of Work prepared by CIGNEX, which outlined the scope and cost of the work on the MyLam/PK redesign project. (*See* D.I. 55 at 2; D.I. 61 at 5).

At some point after CIGNEX began work on the project, problems developed. CIGNEX was unable to meet certain deadlines (including completion by July 2015), and the cost of the project apparently exceeded the initial proposal. (*See, e.g.*, D.I. 55 at 3). In August 2015, Lam stopped paying CIGNEX, but CIGNEX nevertheless continued to work on the MyLam/PK redesign project. (*See id.*; *see also* D.I. 1 ¶ 11; D.I. 61 at 9-12). Although CIGNEX continued working, the relationship between the parties deteriorated as the problems persisted. By late April

1

or early May of 2016, Lam had suggested it may seek "legal recourse" if CIGNEX was unable to deliver as promised under the Agreement. (*See* D.I. 62, Ex. 1 at CIGNEX00043 ("**Legal Option** – CIGNEX will not be able to respond favorably if the options are 'Deliver or Legal recourse.'"); D.I. 68, Ex. F at LAM 70 ("Final Delivery Milestone Dates Must Be Met or Legal Recourse Will Be Required – CIGNEX Response – Under the given circumstances going thru legal option is not advisable.")). A few months later, on or around August 5, 2016, Lam issued a stop work order to CIGNEX for the MyLam/PK redesign project. (*See* D.I. 63, Ex. C at LAM 0113523). On March 24, 2017, CIGNEX filed the present action, alleging that Lam breached the Agreement. (D.I. 1 ¶¶ 15-19). In particular, CIGNEX alleges that it performed all of its obligations under the Agreement and Lam has refused to pay the remainder of the amount due for work that CIGNEX performed – *i.e.*, $434,096.71. (D.I. 1 ¶ 11).[1] On May 15, 2017, Lam answered and filed counterclaims for, *inter alia*, breach of contract and unjust enrichment, seeking recovery of all payments rendered to CIGNEX over the course of the project. (*See, e.g.*, D.I. 8 ¶¶ 25-47). Discovery proceeded.

On August 20, 2018, Lam filed the present motion, which seeks a finding of spoliation and sanctions for CIGNEX's failure to preserve email documents from certain former CIGNEX employees involved in the MyLam/PK redesign project. (*See* D.I. 54, 55). The motion was fully briefed as of September 25, 2018 (*see* D.I. 61, 62, 63, 68), and the Court heard oral argument on December 13, 2018 (D.I. 78). At the hearing, the Court ordered CIGNEX to make one of its employees – Mr. Srinivas Tadeparti – available for deposition on issues relating CIGNEX's failure to preserve certain email accounts of former employees. (D.I. 78 at 68:5-15). The Court also

---

[1] In its summary judgment opinion of February 26, 2019, the Court reduced the amount of CIGNEX's damages claim by $58,000. (*See* D.I. 94 at 6).

directed Lam to file Mr. Tadeparti's deposition transcript, and the parties were permitted to submit letters regarding their views of the importance of Mr. Tadeparti's testimony. (*Id.* at 68:16-21). After the transcript and letters were filed (*see* D.I. 85, 86, 87), the Court received further submissions regarding CIGNEX's document retention policies (*see* D.I. 89, 90, 91, 93).

## II. LEGAL STANDARDS

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv. Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Historically, in the Third Circuit, "a finding of bad faith [has been] pivotal to a spoliation determination." *Id.* at 79.

If a court finds that spoliation occurred, it must then determine an appropriate sanction for the suppression or withholding of evidence. The sanctions analysis focuses on "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

Rule 37(e) of the Federal Rules of Civil Procedure addresses sanctions available for a party's loss (or destruction) of electronically stored information ("ESI").[2] Rule 37(e) provides:

> If electronically stored information that should have been preserved
> in the anticipation or conduct of litigation is lost because a party
> failed to take reasonable steps to preserve it, and it cannot be
> restored or replaced through additional discovery, the court:

---

2     Rule 37(e) in its current form became effective December 1, 2015. Prior to the 2015 amendment, subsections (e)(1) and (e)(2) did not exist. *See* FED. R. CIV. P. 37(e) (2006).

3

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Under this Rule, a party's loss of ESI may be sanctionable when: (1) litigation is ongoing or anticipated, (2) the party failed to take reasonable steps to preserve the ESI, and (3) the information lost cannot be restored or replaced through additional discovery. Rule 37(e)(1) allows for curative measures when a party's loss of ESI causes prejudice to another party, while Rule 37(e)(2) allows for more severe sanctions when the loss of ESI occurred with "intent to deprive another party of the information's use in litigation." FED. R. CIV. P. 37(e)(2). Subsection (e)(1) is thus concerned with a party's negligent or grossly negligent failure to preserve ESI, whereas subsection (e)(2) is directed to instances where a party intentionally destroyed or lost ESI. *See* FED. R. CIV. P. 37(e)(2) Advisory Committee Notes to 2015 Amendment ("The better rule for the negligent or grossly negligent loss of [ESI] is to preserve a broad range of measures to cure prejudice caused by its loss [*i.e.*, (e)(1)], but to limit the most severe measures to instances of intentional loss or destruction [*i.e.*, (e)(2)]."). In this way, Rule 37(e)(1) appears to depart from the traditional spoliation analysis under Third Circuit law in that it allows for sanctions (*i.e.*, curative measures) for conduct falling short of "bad faith" when the information lost is in the form of ESI.[3] *See, e.g.*, *Orologio of Short*

---

[3] By its terms, Rule 37(e) applies only to electronically stored information. When other forms of information are at issue (*e.g.*, physical evidence, paper documents, etc.), the spoliation analysis follows the framework set forth in *Bull*.

4

*Hills Inc v. The Swatch Grp. (U.S.) Inc.*, 653 F. App'x 134, 145 (3d Cir. 2016) ("Spoliation of evidence requires 'bad faith,' not mere negligence . . . ." (citing *Bull*, 665 F.3d at 79)).

## III. DISCUSSION

On or around May 25, 2018, as fact discovery was ongoing, CIGNEX notified Lam that the emails of certain former CIGNEX employees who worked on the MyLam/PK redesign project were not preserved. (*See* D.I. 55, Ex. H). CIGNEX claims that these email accounts were deleted in the 2015-2016 timeframe pursuant to CIGNEX's email-retention policy. (*See* D.I. 61 at 2-3). According to that policy, a former employee's emails are usually deleted from CIGNEX's internal system[4] on or around the employee's last day at CIGNEX. (*See* D.I. 62 ¶ 7(a)). For thirty days thereafter, the former employee's emails remain accessible to CIGNEX via its third-party hosting provider (AppRiver). (*See* D.I. 62 ¶ 7(d)). After those thirty days elapse, CIGNEX can elect to continue paying the monthly fee to store the former employee's emails with AppRiver, or CIGNEX can stop paying and the emails become inaccessible to CIGNEX. (*See id.* ¶¶ 7(b)-(c); *see also* D.I. 61 at 2-3). Pursuant to this policy, CIGNEX stopped paying to store the emails of many former employees who worked on the MyLam/PK redesign project and, as a result, those emails were not preserved (and therefore not available to produce in this litigation).

The following chart identifies the former CIGNEX employees whose emails were not preserved, along with the employee's termination date and the last day that CIGNEX stored the emails:

| CIGNEX Employee | Last Day Employee Worked at CIGNEX | Last Day CIGNEX Stored Employee's Email |
|---|---|---|
| Ramesh Chowhan | 6/11/2015 | 6/11/2015 |
| Sandeep Nair | 6/18/2015 | 6/18/2015 |

---

[4] CIGNEX uses third-party hosting for email storage, but it also stores some emails on its own system. (*See* D.I. 62 ¶¶ 4, 7(d)).

5

| CIGNEX Employee | Last Day Employee Worked at CIGNEX | Last Day CIGNEX Stored Employee's Email |
|---|---|---|
| Amit Barbaria | 10/29/2015 | 11/28/2015 |
| Arun Nityanandam | 11/13/2015 | 12/13/2015 |
| Nitin Yadav | 12/4/2015 | 1/3/2016 |
| Ravi Kumar Gupta | 2/12/2016 | 2/12/2016 |
| Payal Shah | 4/1/2016 | 4/1/2016 |
| Omprakash Misha | 4/26/2016 | 5/25/2016 |
| Dhaval Joshi | 6/21/2016 | 6/21/2016 |
| Subramaniam Pillai | 2/26/2016 | 8/4/2016 |

(*See* D.I. 55 at 6; D.I. 61 at 4-7 & 7 n.3; *see also* D.I. 55, Ex. I at 3; D.I. 62 ¶ 7(d)). The date of last storage in the chart above is the last day CIGNEX stored the emails internally – the emails remained available via AppRiver for at least thirty days beyond that date. (*See* D.I. 62 ¶ 7(d)).

Lam argues that CIGNEX's failure to preserve email for the above-referenced former employees amounts to willful spoliation and warrants severe sanctions. (D.I. 55 at 13-14). Lam contends that litigation between the parties was reasonably foreseeable as of August 2015 when Lam stopped paying CIGNEX and, therefore, CIGNEX had a duty to preserve relevant evidence from that point forward. (*Id.* at 6-7, 11). In Lam's view, any instance after August 2015 in which CIGNEX failed to preserve emails of former employees who worked on the project constitutes willful spoliation of evidence. (*Id.* at 11-13). Lam never articulates – let alone demonstrates with facts – how CIGNEX's conduct rises to the level of willfulness (or bad faith), but Lam nevertheless requests that the Court impose severe sanctions for the loss of these emails. (*See id.* at 1, 14 (requesting "striking and dismissing CIGNEX's claims" or in the alternative an adverse-inference against CIGNEX)).

As an initial matter, it is necessary to clarify the nature and scope of the spoliation analysis that the Court believes should apply under the present facts. Neither party articulates the issue as

6

a failure to preserve ESI within the meaning of Rule 37(e) and, instead, the parties focus on the spoliation analysis as set forth in *Bull* and related cases.[5] But the allegedly spoliated evidence in this case is email, which is undeniably ESI. Where, as here, the issue of spoliation turns on a party's loss or destruction of ESI, Rule 37(e) appears to govern the analysis.[6]

Before turning to the requirements of subsections (e)(1) and (e)(2), the Court must first address the threshold issues of Rule 37(e) – *i.e.*, whether CIGNEX should have preserved former employees' email because litigation was ongoing or anticipated, whether CIGNEX failed to take reasonable steps to preserve the email, and whether the lost information cannot be restored or replaced via other discovery. *See* FED. R. CIV. P. 37(e) (preamble). As to the first two, the Court finds that CIGNEX should have preserved at least some of these email accounts in anticipation of litigation, but it failed to take reasonable steps to do so.[7] Although Lam claims that litigation was reasonably foreseeable when it stopped paying as of August 2015, CIGNEX maintains that litigation was not reasonably foreseeable until the stop-work order issued on August 5, 2016. (*See* D.I. 61 at 14 ("[T]he only logical point at which litigation would be reasonably foreseeable

---

[5] In fact, neither Lam nor CIGNEX even cite Rule 37(e) in their briefs.

[6] There appears to be a question as to whether the Court may deviate from Rule 37(e) – *i.e.*, use its inherent authority to impose sanctions – when the spoliation issue is based on the loss or destruction of ESI. The Advisory Committee Notes to the 2015 Amendment to Rule 37(e) state that the rule "forecloses reliance on inherent authority or state law to determine when certain measures should be used" as a sanction for a party's loss of ESI that should have been preserved. *See* FED. R. CIV. P. 37(e) Advisory Committee Notes to 2015 Amendment. The Supreme Court, however, has made clear that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991).

[7] Rule 37(e) follows the "reasonable foreseeability" test for determining whether information should have been preserved in anticipation of litigation. *See* FED. R. CIV. P. 37(e) Advisory Committee Notes to 2015 Amendment ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve.").

7

to an objective litigant is when Lam issued the stop work order to Cignex on August 5, 2016.")).

The Court disagrees with both parties, instead finding that litigation was reasonably foreseeable at least as of late April or early May of 2016. By that point in time, Lam had informed CIGNEX that litigation would be forthcoming if the situation did not improve, and CIGNEX was preparing a reply indicating it would not "respond favorably" to a legal option. (D.I. 62, Ex. 1 at CIGNEX00043; *see also* D.I. 68, Ex. F at LAM 70). Once litigation was reasonably foreseeable to CIGNEX, it should have (and could have) preserved emails of former employees, including Omaprakash Misha, Dhaval Joshin and Subramaniam Pillai, all of whose email was still stored on CIGNEX's internal system well after litigation was foreseeable.[8] Even after that, CIGNEX could have avoided the loss by continuing to pay AppRiver to store emails, but chose not to. The Court thus finds that CIGNEX failed to take reasonable steps to preserve the emails of Mr. Misha, Mr. Joshin and Mr. Pillai, all of which should have been preserved in anticipation of litigation.[9]

As to the third threshold issue of Rule 37(e), Lam has not shown that the lost emails "cannot be restored or replaced through additional discovery." FED. R. CIV. P. 37(e); *see also Monolithic Power Sys., Inc. v. Intersil Corp.*, No. 16-1125-LPS, 2018 WL 6075046, at *3 (D. Del. Nov. 19, 2018) (sanctions under Rule 37(e) inappropriate where defendant failed to show missing instant messages "cannot be restored or replaced through additional discovery"). Perhaps this failure is

---

[8] There is an argument that CIGNEX should also have attempted to retrieve the emails of Payal Shah from AppRiver in the thirty days following his April 1, 2016 termination.

[9] Even under CIGNEX's proposed date for reasonable foreseeability of litigation – August 5, 2016 – there is no explanation for CIGNEX's failure to preserve the email of Mr. Pillai. CIGNEX admits that it has access to a former employee's email for at least thirty days after it stops storing them internally, and it was not until August 4, 2016 that Mr. Tadeparti announced that he no longer needed Mr. Pillai's emails. (D.I. 62 ¶ 22; *see also* D.I. 61 at 6 n.3). There is no doubt that CIGNEX had until at least September 4, 2016 to preserve Mr. Pillai's emails, and the Court is troubled by CIGNEX's inexplicable failure to do so.

not surprising given that Lam did not address CIGNEX's conduct under Rule 37(e), yet because neither party suggests to the contrary, the Court will presume that the lost emails of Mr. Misha, Mr. Joshin and Mr. Pillai cannot, at this point, be restored or replaced through additional discovery. *See, e.g.*, *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 429 (W.D.N.Y. 2017) ("Nothing in the record before the Court suggests that the event recorder data may be restored or replaced, and defendants have not argued otherwise. Accordingly, the Court concludes that this element of Rule 37(e) has been met.").

Turning to the specifics of subsections (e)(1) and (e)(2), the Court finds that Lam has not made a sufficient showing to invoke the severe sanctions of the latter. Although Lam claims that CIGNEX's conduct amounts to "willful spoliation," Lam fails to point to any facts that support a finding that CIGNEX acted in bad faith or with "intent to deprive another party of the information's use in the litigation," as required by Rule 37(e)(2). Therefore, to the extent that CIGNEX's failure to preserve its former employees' email is actionable, the Court proceeds under Rule 37(e)(1), which allows the Court to impose curative measures only "upon a finding of prejudice to another party from the loss of the information." FED. R. CIV. P. 37(e)(1). "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." *Monolithic Power*, 2018 WL 6075046, at *1 (quoting Rule 37(e)(1) Advisory Committee Notes to 2015 Amendment); *see also Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, at *5 (E.D.N.C. June 7, 2017) ("In order to impose a sanction under Rule 37(e)(1), the court must have some evidence regarding the particular nature of the missing ESI in order to evaluate the prejudice it is being requested to mitigate."). Rule 37(e)(1) does not impose a burden on any party to either prove or disprove prejudice – rather, the Court is to use its

discretion to assess whether prejudice exists from the loss of ESI (including which party should bear the burden). *See* FED. R. CIV. P. 37(e)(1) Advisory Committee Notes to 2015 Amendment.

Lam claims that it has suffered prejudice because the lost emails may have contained information showing, *inter alia*, how CIGNEX viewed the Agreement ("deliverable" vs. "time and material" contract), how CIGNEX understood the technical requirements of the MyLam/PK redesign project, why CIGNEX continued to work despite nonpayment, etc. (*See* D.I. 55 at 14). CIGNEX, on the other hand, claims that it has no idea whether the lost information would have been favorable to Lam and, in fact, argues that the information "might very well" have been favorable to CIGNEX. (D.I. 61 at 17; *see also* D.I. 62 ¶ 23). In support, CIGNEX states that its email-retention policy is content-neutral and, once the employee departs and their emails are no longer needed, all emails are deleted – including ones that may be favorable to CIGNEX. (D.I. 61 at 17; *see also* D.I. 62 ¶ 12).

As discussed above, only the emails of Mr. Misha, Mr. Joshin and Mr. Pillai clearly constitute lost ESI that CIGNEX should have preserved in anticipation of litigation within the meaning of Rule 37(e). Whether the burden here is on Lam to show prejudice from the loss of these emails, or whether the burden is on CIGNEX to show Lam has not suffered prejudice from the loss, the Court concludes that there is insufficient evidence either way. Lam's suggestion as to the potential contents of the lost emails appears to be speculation. Although CIGNEX asserts that its policy is content-neutral, it likewise does not offer any meaningful showing as to the contents of the lost emails one way or the other. On this record, the Court cannot conclude that Lam has been prejudiced by the loss of Mr. Misha, Mr. Joshin and Mr. Pillai's emails.[10] That

---

[10] Additionally, although not dispositive, it is worth noting that Lam never attempted to obtain any of the lost emails from AppRiver, CIGNEX's third-party vendor. That Lam failed to pursue other possible avenues to obtain these emails (*e.g.*, a subpoena to AppRiver) may

there is insufficient evidence of prejudice means that a curative measure under Rule 37(e)(1) is inappropriate.

Finally, for the sake of completeness, even if the spoliation analysis were to proceed outside the context of Rule 37(e), the Court would decline to impose sanctions using its inherent authority. To invoke the Court's inherent power to sanction spoliation, Lam must satisfy the elements of spoliation under Third Circuit law, which requires a showing of bad faith. *See Bull*, 665 F.3d at 79. As discussed above, Lam has not shown that CIGNEX's failure to preserve the email of certain former employees was willful, intentional or otherwise done in bad faith. Under these facts, the Court does not believe that sanctions are warranted.

## IV. CONCLUSION

For the foregoing reasons, Lam's motion for a finding of spoliation and sanctions (D.I. 54) is DENIED. An appropriate order will follow.

---

suggest that any prejudice from the loss is not as significant as Lam claims. *See Medeva Pharma Suisse A.G. v. Roxane Labs., Inc.*, No. 07-5165 FLW, 2011 WL 310697, at *16 n.7 (D.N.J. Jan. 28, 2011) ("While not necessary for the Court to reach this conclusion, the fact that Medeva never sought to obtain the missing Anapharm documents directly from Anapharm, reinforces the Court's determination that Medeva has not been prejudiced by their nonproduction.").

11