# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CIGNEX DATAMATICS, INC., ) | C.A. No. 17-00320-MN |
| *Plaintiff/* ) | |
| *Counterclaim Defendant*, ) | REDACTED PUBLIC VERSION |
| v. ) | Filed May 20, 2020 |
| LAM RESEARCH CORPORATION, ) | |
| *Defendant/* ) | |
| *Counterclaim Plaintiff.* ) | |

**PLAINTIFF CIGNEX DATAMATICS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES PURSUANT TO FED. R. CIV. P. 54 AND THE PARTIES' AGREEMENT AND AN AWARD OF PRE- AND POST-JUDGMENT INTEREST**

Theodore A. Kittila (#3963)
James G. McMillan, III (#3979)
**HALLORAN FARKAS + KITTILA LLP**
5803 Kennett Pike, Suite C
Wilmington, Delaware 19807
Phone: (302) 257-2011
Email:  tk@hfk.law
            jm@hfk.law

Dated: May 19, 2020

*Attorneys for Plaintiff/Counterclaim Defendant CIGNEX Datamatics, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   NATURE AND STAGE OF PROCEEDINGS............................................................................1

II.  SUMMARY OF ARGUMENT .................................................................................................3

III. STATEMENT OF FACTS ........................................................................................................4

IV. ARGUMENT ...........................................................................................................................5

    A.  Lam Is Contractually Obligated to Pay Cignex's Reasonable Attorneys' Fees .................5

        1.  Lam is entitled to an award of fees and other expenses because it was "predominant" in the litigation ................................................................................5

        2.  Lam's partial success on summary judgment has no impact on Cignex's status as the prevailing party ...........................................................................................8

        3.  Cignex's partial success (*i.e.*, no recovery for CR-4 and CR-5) has no impact on Cignex's status as the prevailing party ...............................................................9

        4.  There is no dispute that settlement offers may properly be used to address attorneys' fees in this case without running afoul of Federal Rule of Evidence 408 ...............................................................................................................................9

        5.  Lam did not make a settlement offer, but only made demands for payment by Cignex ...........................................................................................................................10

        6.  ████████████████████████████████████████████████ ..11

    B.  Cignex's Attorneys' Fees Are Reasonable ......................................................................12

    C.  Cignex Is Entitled to Pre- and Post-Judgment Interest at the Delaware Legal Rate, Compounded Quarterly.....................................................................................................17

V.  CONCLUSION......................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                              <u>Page(s)</u>

*AFH Holding & Advisory, LLC v. Emmaus Life Sciences, Inc.*,
    2014 Del. Super. LEXIS 228 (Del. Super. Ct. Apr. 16, 2014) .................................. *passim*

*Brandon v. Gottlieb*,
    2000 Del. Ch. LEXIS 97 (Del. Ch. July 13, 2000) ............................................. 5, 8, 17-19

*Brandywine Smyrna, Inc. v. Millennium Builders, LLC*,
    34 A.3d 482 (Del. 2011) ...................................................................................................18

*CertiSign Holding, Inc. v. Kulikovsky*,
    2018 Del. Ch. LEXIS 185 (Del. Ch. June 7, 2018) .........................................................18

*Comrie v. Enterasys Networks, Inc.*,
    2004 Del. Ch. LEXIS 53 (Del. Ch. Apr. 27, 2004) ................................................. *passim*

*Dow Chem. Canada Inc. v. HRD Corp.*,
    2013 U.S. Dist. LEXIS 105408 (D. Del. July 29, 2013) ........................................5, 12, 13

*Enzo Life Sciences, Inc. v. Adipogen Corp.*,
    82 F. Supp. 3d 568 (D. Del. 2015).....................................................................................17

*Farrar v. Hobby*,
    506 U.S. 103 (1992)...........................................................................................................16

*Fasciana v. Elec. Data Sys. Corp.*,
    829 A.2d 178 (Del. Ch. 2003)............................................................................................16

*Great American Opportunities, Inc. v. Cherrydale Fundraising*,
    2010 Del. Ch. LEXIS 15 (Del. Ch. Jan. 29, 2010) .....................................................17, 19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...........................................................................................................16

*Ingram v. Oroudjian*,
    647 F.3d 925 (9th Cir. 2011) .......................................................................................10, 13

*In re U.S. Golf Corp.*,
    639 F.2d 1197 (5th Cir. 1981) ...........................................................................................13

*Johnston v. Arbitrium (Cayman Islands) Handels AG*,
    720 A.2d 542 (Del. 1998) ............................................................................................12, 13

*Lohman v. Duryea Borough*,
    574 F.3d 163 (3d Cir. 2009).............................................................................................10

*Mahani v. Edix Media Group, Inc.*,
   935 A.2d 242 (Del. 2007) ......................................................................14, 15, 16

*Moon Express, Inc. v. Intuitive Machines, LLC*,
   2018 U.S. Dist. LEXIS 176571 (D. Del. Oct. 15, 2018) ....................................17

*Mrs. Fields Brand, Inc. v. Interbake Foods LLC*,
   2018 Del. Ch. LEXIS 2 (Del. Ch. Jan. 5, 2018) ............................................3, 9

*Norman v. Hous. Auth. of City of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) .........................................................................13

*Parallel Iron LLC v. NetApp, Inc.*,
   84 F. Supp. 3d 352 (D. Del. 2015).....................................................................10

*Summa Corp. v. Trans World Airlines, Inc.*,
   540 A.2d 403 (Del. 1988) ...................................................................................18

*Valeant Pharmaceuticals International v. Jerney*,
   921 A.2d 732 (Del. Ch. 2007)............................................................................18

*West Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*,
   2009 Del. Ch. LEXIS 23 (Del. Ch. Feb. 23, 2009).................................. *passim*

*World-Win Marketing, Inc. v. Ganley Management Co.*,
   2009 Del. Ch. LEXIS 151 (Del. Ch. Aug. 18, 2009)...........................................7

**Statutes**

6 *Del. C.* § 2301(a)...................................................................................................17

**Rules**

Delaware Lawyers' Rules of Professional Conduct 1.5(a)(1) .....................................11

Federal Rule of Civil Procedure 54 ...........................................................................1

Federal Rule of Evidence 408....................................................................................10

Plaintiff/Counterclaim Defendant CIGNEX Datamatics, Inc. ("Cignex") submits this Opening Brief in Support of Its Motion for Attorneys' Fees and Other Expenses Pursuant to Fed. R. Civ. P. 54 and the Parties' Agreement and an Award of Pre- and Post-Judgment Interest, seeking an award of its reasonable attorneys' fees against Defendant/Counterclaim Plaintiff Lam Research Corporation ("Lam") and, in addition, an award of pre- and post-judgment interest on the Court's judgment in its favor and against Lam.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This case involves competing claims for breach of contract.  Cignex filed the one-count Complaint for breach of contract on March 24, 2017.  D.I. 1.  Cignex was represented by Morris James LLP as Delaware counsel and by Kegler Brown Hill + Ritter LPA of Columbus, Ohio.  The case was assigned to a "vacant judgeship" and, on March 29, 2017, the Court referred the case to Magistrate Judge Christopher J. Burke for handling through case-dispositive motions.  On May 15, 2017, Lam filed its Answer and a four-count Counterclaim for breach of contract, bad-faith breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  D.I. 8.  Cignex filed its Answer to the Counterclaim on June 16, 2017.  D.I. 10.

Thereafter, a scheduling order was entered on July 20, 2017, setting trial for October 15, 2018 (D.I. 16), ███████████████████████████████.  Discovery requests and written responses were served and depositions of eight witnesses were taken in May and June 2018.  On July 23, 2018, Lam filed a motion for leave to amend its counterclaim.  D.I. 45.  On August 20, 2018, Lam filed a Motion for Finding of Spoliation and for Sanctions against Cignex based on Cignex's alleged failure to preserve certain email evidence from the files of its former employees.  D.I. 54.

On August 31, 2018, the case was assigned to Judge Maryellen Noreika.  On October 5, 2018, Cignex filed a substitution of counsel, withdrawing the appearances of its prior counsel and substituting the appearance of Halloran Farkas + Kittila LLP.  D.I. 72.

On December 4, 2018, Lam filed a motion for summary judgment based on its argument that the parties' agreement (the "Agreement") was a fixed-price contract that required completion of the Project and not a time-and-materials contract that required payments to Cignex as services were provided.  D.I. 74.  Judge Noreika held oral argument on Lam's motion to amend its counterclaim and Lam's spoliation motion on December 13, 2018.  The Court ruled from the bench, denying Lam's motion to amend, and ordered that Mr. Srinivas Tadeparti of Cignex be made available for deposition on the allegations of spoliation.  Following the deposition of Mr. Tadeparti, the parties submitted supplemental briefing on the spoliation motion.  D.I. 86, 87, 90, 93.

On February 26, 2019, the Court issued a Memorandum Opinion (D.I. 94) and Order (D.I. 95) denying Lam's motion for summary judgment except to the extent of a claim for $58,000 for a software subscription fee.  On March 11, 2019, the Court issued another Memorandum Opinion denying Lam's spoliation motion and its request for sanctions against Cignex, finding that Lam had not shown that it was prejudiced by any alleged spoliation or that Cignex's alleged failure to preserve certain email evidence "was willful, intentional or otherwise done in bad faith."  D.I. 100 at 10-11.

The Court held a three-day bench trial on June 24, 26, and 27, 2019.  The parties submitted post-trial opening and answering briefs and proposed findings of fact.  D.I. 113-116, 121-124.  In its Memorandum Opinion issued on April 29, 2020 (the "Opinion" or "Mem. Op."), the Court found that Lam was liable to Cignex for breach of the Agreement, which included a "Contract for

Independent Contractor or Consultant Services" dated October 28, 2014 (the "Master Services Agreement" or "MSA"), under which Cignex was required to provide services in connection with a project to develop a web portal for Lam (the "Project").  PTX 44; Uncontested Facts in the Final Pretrial Order [D.I. 99], p. 3.  The Court also found that Cignex was not liable to Lam on any of Lam's counterclaims.  The Court based its decision on its finding that the Agreement was a "time and materials" contract that required Lam to pay for Cignex's services as they were provided and was not a "fixed price" contract that would have required completion of the Project for Cignex to be entitled to any payments.  Mem. Op. 18.

> With respect to attorneys' fees, the Court instructed the parties to:

> address the following issues – with supporting case law – in any forthcoming fees motion:  (1) whether Lam's partial success on summary judgment has an impact on CIGNEX's status as a prevailing party; (2) whether CIGNEX's partial success (*i.e.*, no recovery for CR-4 and CR-5) has an impact on its status as a prevailing party; (3) whether there is a dispute that settlement offers may properly be used to address attorneys' fees in this case without running afoul of Federal Rule of Evidence 408; (4) if settlement offers may be used, what those offers were (with any supporting evidence); and (5) if there has been a mediator's proposal in this case, whether that is considered a settlement offer within the meaning of Paragraph 19 the Agreement and, if so, what that amount was.

Mem. Op. 33-34.  In addition, the Court instructed Cignex, in connection with any motion for attorneys' fees, to "also set forth an analysis on interest," including with respect to pre- and post-judgment interest and "interest rate and frequency of compounding."  Mem. Op. 31.

## II.  SUMMARY OF ARGUMENT

Under applicable Delaware law, "'predominance in the litigation' is the standard to be applied under a 'prevailing party' provision." *Mrs. Fields Brand, Inc. v. Interbake Foods LLC*, 2018 Del. Ch. LEXIS 2, at *4 (Del. Ch. Jan. 5, 2018).  The core issues in this case were whether Cignex breached the Agreement by not completing the Project and whether Lam breached the Agreement by not paying Cignex for time and materials billed on some or all of four outstanding

invoices.  Mem. Op. 18.  The overarching issue was whether the Agreement was a "time and materials" contract that required Lam to pay for Cignex's services as they were provided or a "fixed price" contract that required completion of the Project for Cignex to be entitled to any payments.  *Id.*

Because Cignex prevailed on the overarching issue of contract interpretation, prevailed entirely on Lam's counterclaims, and prevailed on two of the four invoices for which it sought payment, Cignex's victories predominated in the litigation and Cignex is entitled to its reasonable attorneys' fees and other expenses from Lam, subject only to the settlement-offer provisions of the MSA.  Because Lam never made a positive settlement offer, but only demanded that Cignex pay Lam amounts near the full asserted value of its counterclaims, the settlement-offer provisions do not apply and, to the extent they are considered, Cignex's expenses bear a reasonable relation to the difference between Lam's demands and the amount of Cignex's recovery.

In addition, Cignex is entitled to pre- and post-judgment interest at the Delaware legal rate, with post-judgment interest to be assessed on the entire amount of the judgment, including those portions that consist of pre-judgment interest and reasonable attorneys' fees and other expenses.

## III.  STATEMENT OF FACTS

The Agreement required Cignex to provide services on a "time and materials" basis in connection with the Project.  Mem. Op. 19.  Section 19 of the Master Services Agreement contains a provision that gives a right to attorneys' fees to the "prevailing party" in any proceeding relating to or arising out of the MSA:

> In any judicial or arbitration proceeding concerning a dispute relating to or arising out of this Agreement, ***the prevailing party is entitled to recover all reasonable expenses associated with such proceeding*** (including without limitation reasonable costs and fees of attorneys or other professionals), except that (i) if the prevailing party has at any time refused a settlement offer pertaining to such dispute which is equal to or greater than the prevailing party's actual recovery determined in such judicial or arbitration proceeding, then no such fees or costs will be awarded, and

4

(ii) if the prevailing party has at any time refused a settlement offer pertaining to such dispute which is less than the prevailing party's actual recovery determined in such judicial or arbitration proceeding, then any such fees or costs associated with recovering the difference between the refused settlement offer and the actual recovery must bear a reasonable relation to such difference.

PTX 44, p. 4, § 19 (emphasis added).  Cignex was the prevailing party in this proceeding.  It prevailed on CR-1, CR-2, and CR-3, and was awarded damages for breach of contract on those claims.  Mem. Op. 23.  Cignex also prevailed on all of Lam's counterclaims.  Mem. Op. 26, 28, 31-32.

## IV. ARGUMENT

### A. Lam Is Contractually Obligated to Pay Cignex's Reasonable Attorneys' Fees.

#### 1. Lam is entitled to an award of fees and other expenses because it was "predominant" in the litigation.

Where a request for attorneys' fees stems from a diversity contract claim, state law and not federal law controls.  *See Dow Chem. Canada Inc. v. HRD Corp.*, 2013 U.S. Dist. LEXIS 105408, at *2 (D. Del. July 29, 2013) ("Dow's request for attorneys' fees stems from a diversity contract claim where Delaware law, not federal law, controls").  *See also* PTX 44, p. 4, § 17 (providing that MSA "will be governed by the laws of the State of Delaware as applied to agreements made and performed in Delaware by residents of Delaware").

The fee-shifting provision in the MSA awards expenses, including attorneys' fees, to the prevailing party.  *See* PTX 44, p. 4, § 19.  Under applicable Delaware law, "prevailing party" is a "common term;" by choosing it the parties to an agreement "can be presumed to have intended that the term would be applied by the court as it has traditionally done so."  *Brandon v. Gottlieb*, 2000 Del. Ch. LEXIS 97, at *89 (Del. Ch. July 13, 2000).  "That traditional application is an all-or-nothing approach involving an inquiry into which party predominated in the litigation."  *Comrie v. Enterasys Networks, Inc.*, 2004 Del. Ch. LEXIS 53, at *7-8 (Del. Ch. Apr. 27, 2004); *see West*

*Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2009 Del. Ch. LEXIS 23, at *32 (Del. Ch. Feb. 23, 2009) ("[a]bsent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner").  Delaware courts have "typically looked to the substance of a litigation to determine which party predominated."  *West Willow-Bay*, 2009 Del. Ch. LEXIS 23, at *32.

In *Comrie v. Enterasys Networks, Inc.*, 2004 Del. Ch. LEXIS 53, at *9 (Del. Ch. Apr. 27, 2004), the defendants argued that the plaintiffs did not predominate in the litigation because they were awarded only 28 percent of the damages they initially sought.  The Court rejected that argument, finding that "[t]he main issue in this case—and the issue upon which it can be determined the plaintiffs predominated in litigation—is the interpretation of the Agreement."  *Id.* at *10.  The Court's interpretation of the contract was the basis for its damages remedy.  *Id.* at *11.  For the defendants to be awarded fees based on the fact that the plaintiffs were awarded "only" 28 percent of their damages would be "simply contrary to the reality of the litigation as well as the dictates of common sense."  *Id.*

In *West Willow-Bay*, 2009 Del. Ch. LEXIS 23, at *21, the plaintiff asserted claims for breach of contract and sought relief in the form of specific performance or, in the alternative, damages.  West Willow was successful on its substantive breach of contract claim and was awarded damages, but its request for specific performance was denied.  *Id.* at *33.  The defendant argued that West Willow did not prevail because its primary claim for specific performance was denied.  *Id.*  The Court rejected that argument, finding that "damages were an issue subsidiary to contract interpretation."  *Id.*  The Court concluded that "because West Willow prevailed on the

litigation's chief issue—the proper interpretation of the Purchase Agreement, it is entitled to its reasonable fees." *Id.* at *34.

In *AFH Holding & Advisory, LLC v. Emmaus Life Sciences, Inc.*, 2014 Del. Super. LEXIS 228, at *2-3 (Del. Super. Ct. Apr. 16, 2014), the plaintiff, AFH, asserted claims for breach of a binding letter of intent under which AFH agreed to raise capital for the defendant, Emmaus. Emmaus brought counterclaims for breach of contract, fraudulent inducement, and fraud. *Id.* at *4. The parties filed cross-motions for partial summary judgment, with Emmaus seeking a declaration that the contract had been properly terminated and AFH seeking dismissal of Emmaus' fraud and fraudulent inducement claims. *Id.* at *3-4. The Court granted Emmaus' motion and granted AFH's motion in part, finding that Emmaus was not entitled to damages on its fraud and fraudulent inducement claims.

Both AFH and Emmaus sought awards of attorneys' fees under a prevailing party provision in their agreement. *Id.* at *6-7. Emmaus cited *World-Win Marketing, Inc. v. Ganley Management Co.*, 2009 Del. Ch. LEXIS 151, at *8 (Del. Ch. Aug. 18, 2009), in which the Court of Chancery found that "the 'prevailing party' under Delaware law is the party that predominates in the litigation." *Id.* at *7. Looking to the "substance of the litigation," the Court found that there were two sets of issues in the case—breach of contract and fraud. *Id.* The Court found that Emmaus was the prevailing party on the breach of contract issues, but that neither party predominated on the fraud claims. *Id.* at *8-9. The breach of contract claims were "the substantive crux of this litigation." *Id.* at *9. Therefore, the fact that neither party predominated on the fraud claims did not "alter Emmaus' status as the prevailing party under the fee-shifting provision." *Id.*

In its Opinion in this case, the Court found that "both CIGNEX's and Lam's breach of contract claims largely turn on whether the Agreement was a 'time and materials' contract, as

opposed to a 'fixed price' contract that obligated CIGNEX to deliver the completed MyLam.com project in order to receive compensation." Mem. Op. 18. After reviewing the evidence presented at trial, the Court concluded "that the Agreement was a 'time and materials' contract." *Id.* Therefore, Cignex prevailed on the "substantive crux of this litigation," Cignex predominated in the action, and Cignex is entitled to an award of all of its expenses for the entire action, including its reasonable attorneys' fees.[1]

### 2. Lam's partial success on summary judgment has no impact on Cignex's status as the prevailing party.

Because neither party was predominant on Lam's motion for summary judgment, Lam's partial success on the motion does not have any impact on Cignex's status as the prevailing party in the litigation. Predominance is determined by reference to the litigation as a whole. In *West Willow-Bay*, 2009 Del. Ch. LEXIS 23, at *33, the Court of Chancery found that the plaintiff's entitlement to fees "will be determined in reference to the litigation as a whole because the [fee-shifting] clause only contemplates awarding fees to the prevailing party in an 'action.'" Here, the fee-shifting provision contemplates awarding fees to the prevailing party in "any judicial or arbitration proceeding." PTX 44, p. 4, § 19. "Proceeding" in this context is broader than "action" because it includes arbitration proceedings. As in *West Willow-Bay*, it refers to the proceeding as a whole; it does not confer a right to fees for success in any discrete portion of the proceeding.

Even if it did, the substance of Lam's motion for summary judgment was its argument that the Agreement was a fixed-price contract. In its Opinion on the summary judgment motion, the

---

[1] *See also Brandon v. Gottlieb*, 2000 Del. Ch. LEXIS 97, at *90 ("one hesitates to take the approach that [the fee-shifting provision] requires the payment of all of the fees to a party that has prevailed on most of [her] claims but who has also committed a serious breach of contract herself. But that hesitation must give way to the court's duty to give effect to the most reasonable reading of the Settlement Agreement"). Here, although the Court found that Cignex's work on the Project was "apparently questionable," it did not find that Cignex breached the contract. Mem. Op. 27.

Court found that "[t]he thrust of the dispute for summary judgment is whether the totality of the agreement between the parties (including the [MSA] with exhibits, proof of concept and Statement of Work) required completion of the project before payment was due or whether it was a time and materials contract pursuant to which Cignex would be paid for labor and expenses incurred."  D.I. 94 at 4.  Lam did not prevail on that issue and so did not predominate on its motion.  *See* Mem. Op. 1 ("the Court partially denied Lam's motion because it was unable to conclude on the available record that the contract was not a 'time and materials' contract"); *see also Mrs. Fields*, 2018 Del. Ch. LEXIS 2, at *6 (denying motions for attorneys' fees where neither party prevailed on summary judgment).

### 3.     Cignex's partial success (*i.e.*, no recovery for CR-4 and CR-5) has no impact on Cignex's status as the prevailing party.

As stated above, predominance is not determined based on the amount of a prevailing party's recovery relative to the amount sought.  *See Comrie*, 2004 Del. Ch. LEXIS 53, at *9 (finding that the plaintiffs predominated in the litigation even though they were awarded only 28% of the damages they initially sought).  Predominance is determined based on the substance of the litigation.  *See West Willow-Bay*, 2009 Del. Ch. LEXIS 23, at *32 (courts have "typically looked to the substance of a litigation to determine which party predominated").  "The main issue in this case—and the issue upon which it can be determined the plaintiffs predominated in litigation—is the interpretation of the Agreement."  *Comrie*, 2004 Del. Ch. LEXIS, at *10.  Cignex is the prevailing party because it prevailed on the main issue, which was the interpretation of the Agreement.  It does not matter that its success was limited on the facts to CR-1, CR-2, and CR-3.

  **4.**  **There is no dispute that settlement offers may properly be used to address attorneys' fees in this case without running afoul of Federal Rule of Evidence 408.**

This Court, citing Third Circuit precedent, has held that "statements made in the context of settlement negotiations can be considered when calculating a fee award as long as they are not used to prove the merits of the claim." *Parallel Iron LLC v. NetApp, Inc.*, 84 F. Supp. 3d 352, 359 (D. Del. 2015) (citing *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009)); *see also Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) ("[w]e agree with the reasoning of the Third Circuit and therefore hold that the district court did not err by considering settlement negotiations for the purpose of deciding a reasonable attorney fee award in this case").

Under Rule 408 of the Federal Rules of Evidence, evidence of an offer to compromise a claim is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." However, the Court "may admit this evidence for another purpose." Fed. R. Evid. 408(b). Here, evidence of settlement negotiations is being offered not to prove Cignex's claim or disprove Lam's counterclaims—proof on those matters has already been offered and accepted by the Court—but rather for another purpose: to show that the settlement offer terms in the fee-shifting provision in the MSA are not applicable and do not reduce Cignex's recovery for its attorneys' fees and other expenses.

  **5.**  **Lam did not make a settlement offer, but only made demands for payment by Cignex.**

The only evidence of settlement negotiations that the Court need consider is evidence that Lam never made a positive settlement offer to pay any money to Cignex. *See* Affidavit of Divya Kumat ("Kumat Aff."), May 18, 2020 (submitted concurrently herewith), ¶ 16. Lam cannot dispute that fact.

The fee-shifting provision in the MSA contains two conditions limiting an award of fees. First, the prevailing party will not be awarded any fees if it "has at any time refused a settlement offer pertaining to such dispute which is equal to or greater than the prevailing party's actual recovery." PTX 44, p. 4, § 19. There was never any settlement offer by Lam that exceeded the amount of Cignex's recovery, $232,039.71. Kumat Aff. ¶ 16. Lam never offered to pay *any* money to Cignex in settlement of the action. *Id.*

Second, the fee-shifting provision in the MSA limits a party's recovery of attorneys' fees and other expenses "if the prevailing party has at any time refused a settlement offer pertaining to such dispute which is less than the prevailing party's actual recovery." PTX 44, p. 4, § 19. Cignex never refused any settlement offer; it only refused Lam's demands for payment. Kumat Aff. ¶ 16. Even if a settlement demand is considered an "offer," the condition does not affect Cignex's contractual right to attorneys' fees and other expenses. It refers to "the difference between the refused settlement offer and the actual recovery." PTX 44, p. 4, § 19. In this case, the difference between the recovery and Lam's lowest demand is the amount of the award, $232,039.71, plus "a payment of something greater than $500k." Kumat Aff. ¶ 16. If the difference is $732,039.71, then any fees or costs associated with recovering that difference "must bear a reasonable relation to such difference." PTX 44, p. 4, § 19. Cignex's fees and costs are reasonable in relation to the amount of $732,039.71. As discussed below, under Delaware law, reasonableness of fees is determined based on the factors enumerated in Rule 1.5(a)(1) of the Delaware Lawyers' Rules of Professional Conduct (to the extent they are applicable in a contractual fee-shifting case). Under that standard, Cignex's fees and other expenses are reasonable.

6.



**B.     Cignex's Attorneys' Fees Are Reasonable.**

In *Dow Chemical Canada Inc. v. HRD Corp.*, 2013 U.S. Dist. LEXIS 105408, at *2 (D. Del. July 29, 2013), Judge Andrews found that, with respect to the reasonableness of attorneys' fees, a case involving contractual fee shifting "is not the ordinary federal fee-shifting case." Where, as here, the party seeking fees is a sophisticated business entity with "its own attorney managing the litigative efforts of outside counsel," the need for court scrutiny of fees is less than it would be in a case that involves a plaintiff who is not actually paying his attorneys' fees and therefore does not provide a "client check on what attorneys spend." *Id.* at *6.

> To some extent, the fact that Dow has already paid the fees seems to me to be evidence that they were reasonable. In particular, some of the matters that come up

---

[2] *Id.* Indeed, Lam *raised* its settlement demand to $1 million on the eve of trial. *Id.* ¶ 18.

in typical federal fee litigation, such as, the reasonableness of [] attorneys' hourly rate[s] given the attorneys' level of experience, the complexity of the work, and the local market for such work, is not, in my opinion, something that I would consider contested absent some evidence calling the matter into question. A sophisticated consumer's arms-length purchasing of the services establishes that reasonableness, at least in the absence of any contrary evidence. I believe that is also true of the number of hours billed.

(Internal citation omitted) (citing *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 547 (Del. 1998)). In this case, Cignex is a sophisticated business entity whose in-house counsel closely monitored and supervised the litigation and the expenses incurred, and which has already paid its attorneys' fees. *See* Kumat Aff. ¶ 3. Cignex negotiated an across-the-board reduction in its trial counsel's hourly rates and negotiated further discounts in connection with post-trial briefing. *See id.* ¶¶ 6-8. There is no evidence calling into question the reasonableness of the attorneys' hourly rates given their level of experience, the complexity of the work, or the local market for such work. Cignex's arm's-length purchasing of its attorneys' services establishes the reasonableness of its attorneys' hourly rates and of the number of hours billed. There is no contrary evidence.[3]

Moreover, Cignex's litigation *tactics* were reasonable. *See id.* at *7 ("I think Dow has the burden of showing the reasonableness of its litigation tactics (at least if it wants recovery for all of

---

[3] The Court in *Dow Chemical* noted that "one good indication of the reasonableness of Dow's attorneys' fees would be a comparison with HRD's attorneys' fees. Since HRD has not offered such information, the Court infers that if HRD's attorneys' fees were disclosed, they would not provide a basis for challenging Dow's." 2013 U.S. Dist. LEXIS 105408, at *4 n.3 (internal citation omitted) (citing *Johnston*, 720 A.2d at 547).

The Court may also rely on its own familiarity with the legal market. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees"); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (courts are experts as to the reasonableness of attorney fees and award may be based on court's own experience); *In re U.S. Golf Corp.*, 639 F.2d 1197, 1207 (5th Cir. 1981) (same).

its litigation expenses)").  In *Dow Chemical*, the District Court reduced the fee award because Dow did not address its litigation tactics and because the court found "systematic problems with Dow's approach to discovery," granting "at least three motions to compel" against Dow.  *Id.* at *8.  Other than Lam's motion for sanctions for alleged spoliation—which was denied—there were no complaints regarding Cignex's discovery conduct, and Cignex did not engage in any unnecessary motion practice on its own behalf or file any dispositive motions.  Cignex filed a single-count complaint and no amendments or motions to amend.

In cases involving contractual fee-shifting awards, Delaware state courts have found attorneys' fees to be reasonable based on the legal services provided.  "In a contractual fee shifting case, 'reasonableness should be assessed by reference to legal services purchased by those fees, not by reference to the degree of success achieved in the litigation.'"  *AFH Holding*, 2014 Del. Super. LEXIS 228, at *10-11 (quoting *Comrie*, 2004 Del. Ch. LEXIS 53, at *14).  Delaware courts also consider "whether the number of hours devoted to litigation was 'excessive, redundant, duplicative or otherwise unnecessary.'"  *Id.* (quoting *Mahani v. Edix Media Group, Inc.*, 935 A.2d 242, 247-48 (Del. 2007)).  "The Court has discretion in determining a reasonable fee award."  *Id.* (citing *Mahani*, 935 A.2d at 245).

In *Comrie*, 2004 Del. Ch. LEXIS 53, at *14-16, the Court found that the prevailing party's attorneys' fees were reasonable where they were billed on an hourly-rate basis, where they received a 10 percent "courtesy discount" on several of their monthly statements, where the lead partner kept his hourly rate constant throughout the litigation, and where the number of hours incurred through three dispositive motions, extensive discovery, and trial was "entirely reasonable."  Here, Cignex was billed on an hourly-rate basis and received a more-than-13 percent discount on fees from its trial counsel, plus additional discounts for post-trial briefing.  Kumat Aff.

¶ 8.  There was no duplicative work due to over-staffing—the litigation from October 2018 on was staffed by two Partners.

In *AFH Holding*, 2014 Del. Super. LEXIS 228, at *13, the Delaware Superior Court considered the factors enumerated in Rule 1.5(a)(1) of the Delaware Lawyers' Rules of Professional Conduct, finding that the fees charged were "similar to fees charged by comparable law firms in these firms' respective locations," that the attorneys were "experienced practitioners," and that the bills were on an hourly-rate basis.[4]  Each of Cignex's attorneys at trial has approximately 20 years of experience litigating in state and federal courts.[5]  Trial counsel's standard hourly rates are similar to or less than the rates charged by other, similar Delaware law firms.

As in *AFH Holding*, Delaware state courts have referred to the Delaware Lawyers' Rules of Professional Conduct when assessing the reasonableness of fees.  The factors to be considered are enumerated in Rule 1.5(a)(1):

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;

---

[4] The Court in *AFH Holding* reduced the prevailing party's attorneys' fees based on fraud claims that were "duplicative or redundant" of breach of contract claims.  2014 Del. Super. LEXIS 228, at *13-14.  Here, the operative complaint asserted only one count for breach of contract.

[5] Cignex's prior counsel, Meghan Adams, Esq., then of Morris James LLP, now-Judge Adams, was appointed as a judge on the Delaware Superior Court in July 2019.

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*DLRPC* 1.5(a)(1); *see AFH Holding*, 2014 Del. Super. LEXIS 228, at *10 (quoting Rule).

The Delaware Supreme Court applied those factors in *Mahani v. EDIX Media Group, Inc.*, 935 A.2d 242, 244 (Del. 2007). In *Mahani*, the Court of Chancery awarded the defendant, EDIX, all of its attorneys' fees and other expenses based on a contractual fee-shifting provision. The plaintiff, Mahani, appealed to the Delaware Supreme Court, arguing that the Chancellor failed to consider all of the factors under Rule 1.5(a)(1), but instead based the award entirely on EDIX's (partial) success in the action. *See id.* at 246. The Delaware Supreme Court affirmed the award, finding that the lower court's "assessment of the reasonableness of EDIX's attorneys' fees and expenses was carefully considered, based on facts in the record, and was neither arbitrary [nor] capricious as a result." *Id.*

Mahani argued that the Court's "*primary consideration*" should have been the fourth factor, EDIX's limited success at trial, citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 178, 185 (Del. Ch. 2003), in which the United States Supreme Court and the Delaware Court of Chancery, respectively, found that the fourth factor, expressed as "the result obtained in the litigation in comparison to the amount sought[,] should be the primary consideration in determining the reasonableness of an award of attorneys' fees." *Mahani*, 935 A.2d at 247 (emphasis in original). The Delaware Supreme Court distinguished those cases, finding that they were all "statutory fee shifting cases" and that, in contractual fee shifting cases, a party's "limited trial success is not the critical factor in determining the reasonableness of [its] attorneys' fees and other expenses." *Id.* (citing *Comrie*, 2004 Del. Ch. LEXIS 153).

16

The Delaware Supreme Court concluded that the trial court "properly refused to give primary weight to EDIX's limited trial success and considered all the factors listed in DLRPC 1.5(a)." *Id.* at 248. The Court of Chancery "placed considerable weight on the time and labor necessary for EDIX to prepare the case for trial [and] found that Mahani's refusal to cooperate at every stage of the proceedings outweighed EDIX's limited trial success and heavily contributed to the total number of hours EDIX spent litigating the case." *Id.* In this case, the time and labor necessary for Cignex to prepare the case for trial was substantially increased by Lam's unsuccessful motions to amend its counterclaims, for summary judgment, and for discovery sanctions. Additionally, Lam's refusal to settle for a reasonable amount—including its settlement demand increase to $1 million on the eve of trial—made this case impossible to settle for Cignex.

Accordingly, Cignex is entitled to an award of all of its costs and expenses, including its reasonable attorneys' fees, incurred in connection with this action, including in any appeal of this Court's rulings.

### C.   Cignex Is Entitled to Pre- and Post-Judgment Interest at the Delaware Legal Rate, Compounded Quarterly.

In *Enzo Life Sciences, Inc. v. Adipogen Corp.*, 82 F. Supp. 3d 568, 607 (D. Del. 2015), the district court stated that "Delaware law governs the determination of pre- and post-judgment interest as the breach of contract was governed by Delaware law." In this case, the MSA was governed by Delaware law. Under applicable Delaware law, Cignex is entitled to pre- and post-judgment interest at the Delaware legal rate, compounded quarterly.

In *Great American Opportunities, Inc. v. Cherrydale Fundraising*, 2010 Del. Ch. LEXIS 15, at *119 (Del. Ch. Jan. 29, 2010), the Delaware Court of Chancery awarded pre- and post-judgment interest at the legal rate, compounded quarterly, finding that "Delaware courts routinely award such interest, using the 'legal rate' as the default rate." The Court also included post-

judgment interest "on the full amount of the judgment, including that part comprised of pre-judgment interest." *Id.* at *120 (citing *Brandon*, 2000 Del. Ch. LEXIS 97); *see also Moon Express, Inc. v. Intuitive Machines, LLC*, 2018 U.S. Dist. LEXIS 176571, at *19 (D. Del. Oct. 15, 2018) (quoting *Enzo*, 82 F. Supp. 3d at 607) ("[u]nder Delaware law, a party is entitled to prejudgment interest when the amount of damage is calculable, and such interest has been awarded in breach of contract cases").

Under 6 *Del. C.* § 2301(a), "[w]here there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due."  As the Delaware Supreme Court has stated, "a court of equity has broad discretion, subject to principles of fairness, in fixing the rate [of pre-judgment interest] to be applied…. the legal rate is a mere guide, not the inflexible rule."[6]

In *Brandon*, 2000 Del. Ch. LEXIS 97, at *96-97, the Court of Chancery found that "an award of compounded interest tied to the legal rate will quite likely be inadequate to compensate [the plaintiff] for missing the opportunity to invest the funds due her in one of the nation's longest-running bull markets, but it is a fair proxy for the injury caused to her, and I therefore grant [the plaintiff's] request for an award of pre-judgment interest using that approach."

In *CertiSign Holding, Inc. v. Kulikovsky*, 2018 Del. Ch. LEXIS 185, at *71 (Del. Ch. June 7, 2018), the Court of Chancery awarded pre-judgment interest at the legal rate compounded quarterly.  The Court stated that "prejudgment interest in Delaware cases is awarded as a matter of right, [and] the general rule is that interest accumulates from the date payment was due the

---

[6]*Brandon*, 2000 Del. Ch. LEXIS 97, at *96-97 (quoting *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 410 (Del. 1988), *cert. denied*, 488 U.S. 853) (alteration in original).  The Court in *Brandon* rejected the argument that it was limited in its equitable discretion because the dispute was "a simple breach of contract case," finding that "a rote application of the statutory rate would ignore the realities of the relationship."  *Id.* at *98.

plaintiff." *Id.* (quoting *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011)). The "legal rate of interest has historically been the benchmark for pre-judgment interest." *Id.* (quoting *Summa Corp.*, 540 A.2d at 409).

In *Valeant Pharmaceuticals International v. Jerney*, 921 A.2d 732, 756 (Del. Ch. 2007), the Court of Chancery exercised its discretion to award interest compounded *monthly* because of the defendant's "sophistication" and because he "had the use of $3 million of the company's money since April 2002." The Court concluded that "fairness dictates that the award of interest should be compounded." *Id.*

Pre-judgment interest should be calculated from the date of each of Lam's breaches of contract related to CR-1 and CR-2. Section 4 of the MSA required Lam to pay undisputed invoices within 30 days of issuance. PTX 44, p. 1. The Court awarded damages to Cignex on its claim for invoice 21254, dated August 21, 2015 (PTX 375, pp. 15-16), in the amount of $122,128.19, and invoice 21475, dated October 29, 2015, in the amount of $109,911.52 (PTX 375, pp. 17-19). Mem. Op. 23. The Court entered judgment on May 6, 2020. Cignex is entitled to $45,031.76 in pre-judgment interest on invoice 21254 and $38,920.61 in pre-judgment interest on invoice 21475, for a total of **83,952.37** in pre-judgment interest. *See* Ex. A hereto (calculation of pre-judgment interest).

In addition, Cignex is entitled to post-judgment interest at the Delaware legal rate of 5.25 percent *per annum*, compounded quarterly, on the entire unpaid amount of the judgment, including the parts of the judgment that consist of pre-judgment interest and attorneys' fees and other expenses. *See Brandon*, 2000 Del. Ch. LEXIS, at *101 (awarding "the real economic value of the final judgment on the date it is first entered"); *Great Am. Opportunities*, 2010 Del. Ch. LEXIS 15,

at *119-20 ("Delaware courts routinely award such interest, using the 'legal rate' as the default rate").

## V. CONCLUSION

For the reasons stated above, Cignex respectfully requests that the Court grant it **$531,219.12** in reasonable attorneys' fees (to date)[7] and other expenses, **$83,952.37** in pre-judgment interest, and post-judgment interest at the rate of 5.25 percent, compounded quarterly, on any unpaid amounts, including its attorneys' fees and other expenses and pre-judgment interest, from May 6, 2020 until the judgment is paid in full.

Dated:  May 19, 2020

HALLORAN FARKAS + KITTILA LLP

/s/ Theodore A. Kittila
Theodore A. Kittila (#3963)
James G. McMillan, III (#3979)
5803 Kennett Pike, Suite C
Wilmington, DE  19807
Phone: (302) 257-2011
Email:  tk@hfk.law
        jm@hfk.law

*Attorneys for Plaintiff/Counterclaim*
*Defendant CIGNEX Datamatics, Inc.*

---

[7] A supplemental attorney's fee figure will be submitted after briefing this motion.  Work in progress on this motion is now approximately $16,700.00.