**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CIGNEX DATAMATICS, | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counterclaim Defendant, | ) | |
| | ) | C.A. No. 17-320-MN |
| v. | ) | |
| | ) | |
| LAM RESEARCH CORPORATION, | ) | |
| | ) | |
| Defendant/ | ) | |
| Counterclaim Plaintiff. | ) | |

**ANSWERING BRIEF OF LAM RESEARCH CORPORATION IN OPPOSITION
TO PLAINTIFF CIGNEX DATAMATICS, INC.'S MOTION FOR ATTORNEYS'
FEES PURSUANT TO FED. R. CIV. P. 54 AND THE PARTIES' AGREEMENT AND
<u>AN AWARD OF PRE- AND POST-JUDGMENT INTEREST</u>**

Christopher P. Simon (No. 3697)
David G. Holmes (No. 4718)
Michael L. Vild (No. 3042)
CROSS & SIMON, LLC
1105 North Market Street, Suite 901
P.O. Box 1380
Wilmington, Delaware 19899-1380
(302) 777-4200
(302) 777-4224 facsimile

*Attorneys for Lam Research Corporation
Defendant/Counterclaim Plaintiff*

Dated:  June 2, 2020

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ........................................................................................................2

STATEMENT OF FACTS ...............................................................................................................4

ARGUMENT .....................................................................................................................................4

    I.      Delaware legal standard on fee shifting.................................................................4

    II.     Lam's partial success on the SJ Motion has an impact on CIGNEX's status as the "prevailing party" ........................................................................................5

    III.    CIGNEX's partial success (*i.e.*, no recovery for CR-4 and CR-5) has an impact on CIGNEX's status as the prevailing party...............................................6

    IV.    CIGNEX should not be considered the "prevailing party" in this litigation ...........7

    V.     The interests of justice and equity oppose shifting fees and costs in this case........9

    VI.    The reasonableness of CIGNEX's attorneys' fees................................................14

    VII.   Any pre- or post-judgment interest awarded should not be compounded and should not fluctuate.............................................................................................16

    VIII.  CIGNEX has violated the Mediation Order in this case.......................................18

CONCLUSION................................................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**                                                                                             **Page(s)**

*AHS New Mexico Holdings, Inc. v. Healthsource, Inc.*,
2007 WL 431051 (Del. Ch. Feb. 2, 2007) ...................................................................................7

*Brandin v. Gottlieb*,
2000 WL 100595 (Del. Ch. July 13, 2000)................................................................................16

*Branin v. Stein Roe Inv. Counsel, LLC*,
2015 WL 4710321 (Del. Ch. July 31, 2015...............................................................................16

*Choupak v. Rivkin*,
2015 WL 1589610 (Del. Ch. Apr. 6, 2015) .........................................................................12, 13

*Devex Corp. v. Gen. Motors Corp.*,
569 F. Supp. 1354 (D. Del.), *supplemented*, 577 F. Supp. 429 (D. Del. 1983) ............................17

*Dittrick v. Chalfant*,
2007 WL 1378346 (Del. Ch. May 8, 2007)........................................................................4, 9, 10

*Dow Chem. Canada Inc. v. HRD Corp.*,
2013 WL 3942052 (D. Del. July 29, 2013) ..........................................................................14, 15

*Duncan v. STTCPL, LLC*,
2020 WL 829374 (Del. Super. Feb. 19, 2020)............................................................................9

*Enzo Life Scis., Inc. v. Adipogen Corp.*,
82 F. Supp. 3d 568 (D. Del. 2015)..........................................................................................18

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
817 A.2d 160 (Del. 2002) ......................................................................................................17

*Johnston v. Arbitrium (Cayman Islands) Handels AG*,
720 A.2d 542 (Del. 1998) ......................................................................................................12

*Kaung v. Cole Nat. Corp.*,
884 A.2d 500 (Del. 2005) ......................................................................................................12

*Mrs. Fields Brand, Inc. v. Interbake Foods LLC*,
2018 WL 300454 (Del. Ch. Jan. 5, 2018)..................................................................................9

*Rollins Envtl. Servs., Inc. v. WSMW Indus., Inc.*,
426 A.2d 1363 (Del. Super. 1980)...........................................................................................18

*Ryan v. Tad's Enterprises, Inc.*,
709 A.2d 682 (Del. Ch. 1996)............................................................................16

*Soterion Corp. v. Soteria Mezzanine Corp.*,
2012 WL 5378251 (Del. Ch. Oct. 31, 2012) ...........................................................13

*Summa Corp. v. Trans World Airlines, Inc.*,
540 A.2d 403 (Del. 1988) ................................................................................18

*Vianix Delaware LLC v. Nuance Commc'ns, Inc.*,
2010 WL 3221898 (Del. Ch. Aug. 13, 2010) .......................................................7, 10

*Weinberger v. UOP, Inc.*,
517 A.2d 653 (Del. Ch. 1986)............................................................................17

*W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*,
2009 WL 458779 (Del. Ch. Feb. 23, 2009) .......................................................4, 7, 9

*World-Win Mktg., Inc. v. Ganley Mgmt. Co.*,
2009 WL 2534874 (Del. Ch. Aug. 18, 2009) ...........................................................7

## <u>Rules</u>

Federal Rule of Evidence 408............................................................................1, 18, 19

## <u>Statutes</u>

6 <u>Del</u>. <u>C</u>. § 2301(a)............................................................................16, 17

## NATURE AND STAGE OF PROCEEDINGS

On March 24, 2017, Cignex Datamatics, Inc. ("CIGNEX") filed a complaint against Lam Research Corporation ("Lam") asserting a single count of breach of contract (the "Complaint") [D.I. 1].  On May 15, 2017, Lam filed its Answer and Counterclaims against CIGNEX (the "Counterclaims") [D.I. 8].

On December 4, 2018, Lam filed a motion for summary judgment (the "SJ Motion") [D.I. 74].  On February 26, 2019, the Court issued a Memorandum Opinion, which granted, in part, and denied, in part, the SJ Motion [D.I. 94].  The Court entered an Order that Lam did not owe CIGNEX on an invoice in the amount of $58,800 for an Alfresco software license.

The Court held a three-day bench trial on June 24, 26 and 27, 2019.

On April 29, 2020, the Court issued a Memorandum Opinion (the "Opinion") [D.I. 126] and Order [D.I. 127]. The Court found that "CIGNEX has proven that Lam breached the Agreement by failing to pay for services rendered under CR-1, CR-2 and CR-3, but CIGNEX has failed to prove that Lam is liable for payments in connection with CR-4 and CR-5."  (Op. 34).

The Court also stated, with regard to a motion for attorneys' fees, that any motion should address:

> whether Lam's partial success on summary judgment has an impact on CIGNEX's status as a prevailing party; (2) whether CIGNEX's partial success (*i.e.*, no recovery for CR-4 and CR-5) has an impact on its status as a prevailing party; (3) whether there is a dispute that settlement offers may properly be used to address attorneys' fees in this case without running afoul of Federal Rule of Evidence 408; (4) if settlement offers may be used, what those offers were (with any supporting evidence); and (5) if there has been a mediator's proposal in this case, whether that is considered a settlement offer with the meaning of Paragraph 19 of the Agreement and, if so, what that amount was.

(*Id*. at 33-34).

On May 19, 2020, CIGNEX filed its Motion for Attorneys' Fees Pursuant to Fed. R. Civ. P. 54 and the Parties' Agreement and an Award of Pre- and Post-Judgment Interest (the "Motion

for Attorneys' Fees") [D.I. 130] and its Opening Brief in support of the Motion for Attorneys' Fees (the "Opening Brief") [D.I. 131].

This is Lam's Answering Brief in Opposition to the Motion for Attorneys' Fees.

## SUMMARY OF ARGUMENT

The contractual provision that forms any basis of an award of attorneys' fees is found in the Contract for Independent Contractor or Consultant Services (the "MSA").[1]  Witnesses for both parties testified at trial that the purpose of the MSA was to deliver Lam a completed, updated website (the "MyLam Project").  (*See, e.g.*, Tr. Transcript, June 24, 2020, 150:15-17; 236:24-31; Tr. Transcript, June 26, 2020 275:17-25; Tr. Transcript, June 27, 2020, 490:8-13).  The Court ultimately found that CIGNEX did not complete or deliver the MyLam Project to Lam's satisfaction, and that Lam found numerous problems with the work conducted by CIGNEX.  (Op. ¶ 42).

Importantly, CIGNEX's Complaint, which was filed with a sworn affidavit from a CIGNEX officer, alleged that it completed the MyLam Project without any objection from Lam. CIGNEX further alleged that "CIGNEX delivered the software as per Lam's requirement.  At no time did Lam indicate in writing or verbally that the software did not meet the agreed criteria." (Compl. ¶ 9).  CIGNEX demanded the amount of $434,096.71 represented by six (6) invoices it claimed Lam was obligated to pay.  CIGNEX was ultimately awarded the amounts sought on just two (2) of those six invoices: i.e., $232,039.71.

At trial, Lam showed that it repeatedly objected to and was not satisfied with CIGNEX's work, and that CIGNEX never delivered a completed MyLam Project acceptable to Lam.  Lam

---

[1] The MSA provides, in part, "In any judicial or arbitration proceeding concerning a dispute relating to or arising out this Agreement, the prevailing party is entitled to recover all reasonable expenses associated with such proceeding." (PTX 44, p. 4. §19).

also showed that two invoices that CIGNEX sued to recover had no basis for recovery.  In fact, Lam paid both invoices directly to the party to which they were owed — neither of those parties was CIGNEX.  Equity directs that CIGNEX should not be rewarded for filing claims premised on baseless allegations, including that it had completed the MyLam Project without objection from Lam, and had no legal basis for the amount demanded.

Moreover, although CIGNEX now frames the overarching issue in this case as a question of whether the MSA was a "time and materials" contract or a "fixed price" contract, that was not the premise of its Complaint, nor was it ever Lam's contention in this case.[2]

CIGNEX may have been awarded damages based on two invoices it issued to Lam, because the Court found that the parties' agreement was for "time and materials," but it, ultimately, failed to prevail on its theory of the case, or prove the allegations in its Complaint that it performed in accordance with the MSA and Lam's requirements.  In fact, the trial record showed and the Court found the opposite.  It would be unjust and inequitable under these circumstances if CIGNEX were awarded attorneys' fees under the MSA because it never delivered the MyLam project "as per Lam's requirement" and it did not perform "all of its obligations under the Agreement," as it alleged.

---

[2] In neither Lam's Post-Trial Opening Brief [D.I. 113] nor its Answering Brief [D.I. 123] did it argue that the MSA was a "fixed-price" contract.  Lam argued that the contract price was subject to change, by agreement, but the parties' agreement always obligated CIGNEX to complete the updated MyLam.com portal in a professional manner and deliver the completed portal to Lam for testing and acceptance.  Lam contended CIGNEX never completed the MyLam Project, and Lam received no bargained for performance.

## STATEMENT OF FACTS

For purposes of this Brief, Lam refers to the Findings of Fact in the Opinion, as well as the record at trial.

## ARGUMENT

### I.    Delaware legal standard on fee shifting

"Delaware generally follows the American Rule under which each party is obligated to pay its own attorneys' fees regardless of the outcome; however, where the parties have determined the allocation of fees by private ordering, departure from this general rule and deference to their agreement are warranted."[3]  *W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2009 WL 458779, at *8 (Del. Ch. Feb. 23, 2009).  "Absent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied *in an all-or-nothing manner*." *W. Willow-Bay Court*, 2009 WL 458779 at *8 (emphasis added).  "This Court has typically looked to the substance of a litigation to determine which party predominated.... Additionally, considerations of justice and equity may inform the analysis." *Id*.; *see also Dittrick v. Chalfant*, 2007 WL 1378346, at *2 (Del. Ch. May 8, 2007) ("This court has held that contractual provisions which contemplate fee shifting to the prevailing party should generally be applied on an 'all-or-nothing basis' and, in any event, should not be applied where interests of justice and equity oppose shifting fees and costs.").

The Court must decide, first, whether CIGNEX is the prevailing party.  Even if the Court determines that CIGNEX is the prevailing party, however, it must then determine whether justice

---

[3] Lam agrees with CIGNEX that Delaware law applies to the analysis of the attorneys' fees issue. (*See* Op. Br. 5).

and equity counsel against shifting fees and costs.  Justice and equity in this case do not warrant awarding CIGNEX its attorneys' fees.

## II.   Lam's partial success on the SJ Motion has an impact on CIGNEX's status as the "prevailing party"

The Complaint demanded "no less" than $434,096.71 in breach of contract damages. (Compl. ¶19).  That number was arrived at by a simple tally of what CIGNEX considered unpaid invoices that it issued to Lam.  Those invoices were: 1) Invoice #21254 in the amount of $122,128.19; 2) Invoice #21475 in the amount of $109,911.52; 3) Invoice #30104 in the amount of $58,800; 4) Invoice #30512 in the amount of $20,175; 5) Invoice #30513 in the amount of $99,737; and 6) Invoice  #30514 in the amount of $23,345.

In its memorandum opinion on the SJ Motion, the Court held, "[t]he undisputed evidence before the Court is that Cignex is not a party to the licensing agreement between Alfresco and Lam and that Lam was not obligated to pay Cignex for Alfresco. Moreover, there is no evidence that Cignex paid the $58,000 despite invoicing that amount to Lam."  (D.I. 94 at 6).  There was no basis for CIGNEX's claim that Lam owed it any money for the Alfresco License.  Despite this fact, included as Exhibit B to the Complaint was the Declaration of Ashish Jain, the Vice President of Finance at CIGNEX, in which Mr. Jain swears that Lam owes CIGNEX for the "Alfresco One-Enterprise Base License." (Compl. Ex. B).  Mr. Jain stated in his sworn declaration that he is the "custodial record keeper at CIGNEX" and, as such is duly authorized to state that "Lam currently owes CIGNEX $434,096.71, including the License that CIGNEX delivered to Lam, for which Lam never paid." (*Id.*).

Whether CIGNEX paid for the Alfresco License on behalf of Lam or whether CIGNEX was even in a position to assert Alfresco's claim for payment should have been information readily available to Mr. Jain, as custodial record keeper and Vice President of Finance at CIGNEX.

CIGNEX knew or should have known that its claim to be paid for the Alfresco License had no basis, yet it still asserted it.[4]

The amount of the invoice for the Alfresco License was not insubstantial.  However, its importance is not to be measured solely by its amount.  Lam should not have been put in the position of having to sort out baseless claims from those over which there was a legitimate dispute.

### III.    CIGNEX's partial success (*i.e.*, no recovery for CR-4 and CR-5) has an impact on CIGNEX's status as the prevailing party

Invoice #30512 was for training and, again, was paid by Lam directly to the vendor providing the service — in this instance, a company called SkillDom.  (Tr. Transcript, June 26, 2019, 296:19 – 297:2).  CIGNEX's CEO testified at trial that he was aware that Lam had paid SkillDom directly.  (Tr. Transcript, June 24, 2019, 225:1-6).  Lam's witness, who handled the invoices received from CIGNEX, testified that she informed CIGNEX at the time that Lam paid Invoice #30512 directly.  (Tr. Transcript, June 26, 2019, 296:19 – 297:2).  Despite having this information prior to filing the Complaint, as with the Alfresco License, CIGNEX claimed damages for an invoice that it knew or should have known was already paid by Lam.  Showing that this was not just a one-time error, CIGNEX included the $20,175 in its damages calculation in the Proposed Pretrial Order [D.I. 99 at ¶43] and in its demonstrative exhibit at trial (Tr. Transcript, June 27, 2020, 505:19 - 506:4).

The Court, in its Opinion, held that CIGNEX was not entitled to payment for Invoices #30513 and #30514.  (Op. 23-25).  Therefore, of the six invoices upon which CIGNEX based its claims, CIGNEX did not recover on four.  When determining which party prevailed in the litigation, it is important that CIGNEX failed to win on two-thirds of the invoices that formed the

---

[4] CIGNEX used a demonstrative exhibit at trial that still included the Alfresco claim. (Tr. Transcript, June 27, 2020, 505:19 - 506:4).

basis of its lawsuit.  Based on an "all or nothing" analysis, CIGNEX is not entitled to its attorneys'

fees.

## IV.      CIGNEX should not be considered the "prevailing party" in this litigation

The Court, in its discretion, may determine that no party was the prevailing party in this

litigation and, as such award neither party its attorneys' fees. *AHS New Mexico Holdings, Inc. v.*

*Healthsource, Inc.*, 2007 WL 431051, at \*9 (Del. Ch. Feb. 2, 2007) (finding that, even with a

contractual prevailing party fee-shifting provision, neither party prevailed in the litigation).  *See*

*also W. Willow-Bay Court*, 2009 WL 458779 at \*8 (stating that the Court uses an all-or-nothing

approach to contractual fee-shifting provisions).  There is precedent where, in a case such as this,

the result is mixed (*i.e.*, neither party was wholly successful) that the Court decides to award

neither party its attorneys' fees.  For example, in *Vianix Delaware LLC v. Nuance Commc'ns, Inc*.,

even though one party was awarded damages the Court still decided that it was not the "prevailing

party" and, thus, not entitled to an award of attorneys' fees.  *Vianix Delaware LLC v. Nuance*

*Commc'ns, Inc.*, 2010 WL 3221898, at \*28–29 (Del. Ch. Aug. 13, 2010) ("In light of the outcome

of this action, with both Vianix and Nuance winning on several claims and contentions and Vianix

recovering what may be millions of dollars in damages, but far less than it claimed, I hold that

there was no prevailing party and decline both parties' requests for their attorneys' fees and costs.").

An award of damages to a party is not determinative on the issue of which party prevailed in a

litigation.  *World-Win Mktg., Inc. v. Ganley Mgmt. Co.*, 2009 WL 2534874, at \*3 (Del. Ch. Aug.

18, 2009) (upholding an arbitrator's decision that neither party prevailed in a dispute even though

the plaintiff was awarded some, but not all, of the damages it sought).

The Court, in assessing which party prevailed, should look "to the substance of a litigation

to determine which party predominated."  *W. Willow-Bay Court*, 2009 WL 458779 at \*8.  The

substance of this litigation concerns the MSA — the agreement entered into by CIGNEX and Lam for purposes of updating the MyLam.com portal.  Performance under the MSA was the crux of CIGNEX's Complaint, and the MSA is the basis for CIGNEX's demand that it be paid attorneys' fees.  According to CIGNEX in its Complaint, it was entitled to be paid because: "CIGNEX delivered the software as per Lam's requirement.  At no time did Lam indicate in writing or verbally that the software did not meet the agreed criteria." (Compl. ¶ 9).  In fact, Lam did indicate in writing and verbally that the work CIGNEX's work did not meet the agreed criteria.  (Op. ¶¶ 30, 31, 33).  There was no "delivery" of software because the MyLam project was never completed. (*Id*. at ¶ 42).  CIGNEX also alleged that it "performed all of its obligations under the Agreement" even though, again, its work never went live.  (Compl. ¶ 17).  In short, this was not an agreement where the parties agreed that CIGNEX would perform work and Lam would pay for that work — there was a goal or purpose of the MSA.  That goal was for MyLam.com to go live after CIGNEX performed.  (*See, e.g.*, Tr. Transcript, June 24, 2020, 150:15-17; 236:24-31; Tr. Transcript, June 26, 2020 275:17-25; Tr. Transcript, June 27, 2020, 490:8-13).

The substance of this litigation is performance under the MSA.  When confronted with indisputable facts that CIGNEX had not delivered the MyLam.com website per Lam's requirements, CIGNEX pivoted in litigation (without amending its complaint) and argued that it was entitled to be paid on a time and materials basis.  Although the Court found that CIGNEX was entitled to payment for some (but not all) of the work it performed (on a time and materials basis) in support of the ultimate goal of having MyLam.com go live, the fact that CIGNEX ultimately did not perform should color the Court's analysis of whether to award CIGNEX its attorneys' fees.

Moreover, this litigation encompasses more than one issue.  Even accepting that whether the agreement in this case was a "time and materials" contract or a "fixed price" contract is a key

part of this litigation, there can be more than one "key issue."  The Delaware Court of Chancery, in addressing fee-shifting, wrote, "[I]n my opinion, there can be more than one 'chief' or core issue in a case, and where—as I find to be the case here—the parties split on two equally core issues, neither can be said to have 'prevailed' so as to trigger the contractual entitlement to fee-shifting in the License Agreement."  *Mrs. Fields Brand, Inc. v. Interbake Foods LLC*, 2018 WL 300454, at *3 (Del. Ch. Jan. 5, 2018); *see also Duncan v. STTCPL, LLC*, 2020 WL 829374, at *16 (Del. Super. Feb. 19, 2020) ("Because Service Energy and Mr. Duncan each won and lost a chief issue in this case, on balance, there can be no finding that either predominated in the litigation so as to be the 'prevailing party.'").  Performance under the MSA is a chief issue in this case, and Lam prevailed on that issue by proving that CIGNEX did not perform.  To the extent that the time and materials determination was a key issue in the case, both Lam and CIGNEX prevailed on a key issue.  Under Delaware precedent, the Court should make no award of attorneys' fees in an instance where both parties prevailed on a key issue.

Under Delaware law, this Court may decide that no party in this litigation "prevailed." Given the fact that CIGNEX did not perform "all of its obligations" under the MSA and failed to prevail on two-thirds of the invoices forming the bases of its claim, a finding that neither party prevailed in this litigation is appropriate.

## V.     The interests of justice and equity oppose shifting fees and costs in this case

Even with a contractual fee-shifting provision, a decision whether to award fees is informed by the interests of justice and equity.  "[C]ontractual provisions which contemplate fee shifting to the prevailing party should generally be applied on an 'all-or-nothing basis' and, in any event, should not be applied where interests of justice and equity oppose shifting fees and costs." *Dittrick*, 2007 WL 1378346, at *2; *W. Willow-Bay Court*, 2009 WL 458779 at *8 ("Additionally,

considerations of justice and equity may inform the analysis."). In the *Dittrick* case, the Court did not shift fees, in part, because "it would be highly inequitable for [Defendant] to shoulder all of the fees and expenses of this litigation." *Dittrick*, 2007 WL 1378346, at *2.

In *Vianix Delaware LLC*, the Delaware Court of Chancery took into account a party's handling of key documents and records in the case in its decision to not award attorneys' fees in a case involving contractual fee-shifting. The Court wrote:

> Nuance arguably won a plurality of the issues in dispute at trial. Even so, I cannot as a matter of equity award Nuance its attorneys' fees because its poor recordkeeping provided the primary impetus for Vianix to bring this suit and measurably increased the complexity of the litigation.... Based on these actions, I find that Nuance bears a greater degree of responsibility than Vianix for the substantial cost in time and money of this litigation. Therefore, I conclude that it would be inappropriate to award Nuance its attorneys' fees as the putative prevailing party on the relatively technical ground that it won more disputed issues than Vianix.

*Vianix Delaware LLC*, 2010 WL 3221898, at *28.

Similarly, in this case, CIGNEX caused substantial time and effort to be spent in this litigation due to its handling of documents. Lam filed a motion against CIGNEX seeking sanctions for spoliation of evidence [D.I. 54].[5] The basis for the motion was CIGNEX's destruction of certain emails — including emails from, Subramanian Pillai, the project manager at CIGNEX responsible for guiding its work on the MyLam Project. On August 2, 2017, Lam issued its first set of requests for the production of documents to CIGNEX, and those discovery requests specifically address the issue of "Lost and Destroyed Documents."[6] Despite this pending request,

---

[5] Lam also filed a motion for summary judgment on CIGNEX's complaint because the discovery record, including CIGNEX's admissions, showed that allegations in the Complaint were not true (*i.e.*, CIGNEX delivered the project per Lam's requirements, and Lam never objected to the work performed by CIGNEX). [D.I. 74] CIGNEX's shifting theories of the case also led to Lam filing a motion for leave to amend its counterclaims [D.I. 45].

[6] "If any document requested herein was formerly in your possession, custody, or control and has been lost, destroyed or otherwise disposed of, you are directed to submit in lieu of each such

it was not until May 25, 2018, during deposition discovery in this case, that Lam discovered that email accounts for CIGNEX personnel were not preserved while CIGNEX was working on the Project, but instead had been deleted by CIGNEX, in June 2016.  In other words, Lam, on its own, had to piece together the fact that a large group of documents had been destroyed by CIGNEX, even though CIGNEX had the responsibility of informing Lam about the destroyed documents in their responses to the first set of discovery requests.  This correspondence belonged to the people at CIGNEX with actual knowledge about what was going on the with the project, and Lam was deprived of that evidence.  CIGNEX's failure to adequately respond to discovery lengthened the case — including conducting a separate deposition concerning destruction of documents.

The Court did not grant the spoliation motion, but in its Memorandum Opinion, the Court wrote:

> Once litigation was reasonably foreseeable to CIGNEX, it should have (and could have) preserved emails of former employees, including Omaprakash Misha, Dhaval Joshin and Subramaniam Pillai, all of whose email was still stored on CIGNEX's internal system well after litigation was foreseeable. Even after that, CIGNEX could have avoided the loss by continuing to pay AppRiver to store emails, but chose not to. The Court thus finds that CIGNEX failed to take reasonable steps to preserve the emails of Mr. Misha, Mr. Joshin and Mr. Pillai, all of which should have been preserved in anticipation of litigation.

(D.I. 100 at 8).  Although Lam's spoliation motion was not granted, the Court's findings on the motion do indicate discovery misconduct by CIGNEX that Lam had to work around and address (*e.g.*, there was no easy way to get information from Mr. Pillai, whose emails were destroyed and who does not live in the United States).

---

document a written statement (a) describing in detail the nature of the document and its contents; (b) identifying the person(s) who prepared or authored the document and, if applicable, the person(s) to whom the document was sent or shown; (c) specifying the date on which the document was prepared or transmitted; and (d) specifying, if possible, the date on which the document was lost or destroyed and, if destroyed, the conditions of any reason(s) for such destruction and the person(s) requesting and performing the destruction, their employer(s) and positions."

Moreover, the fact that CIGNEX asserted claims for two invoices that CIGNEX knew, or should have known, had no basis should inform the Court's decision on whether awarding CIGNEX its attorneys' fees is in the interest of justice and equity.  Delaware Courts have considered a party's conduct when deciding to award attorneys' fees even where there is no contractual fee-shifting provision.  The Delaware Supreme Court wrote on the subject:

> It is a general rule that courts in the United States do not award attorney's fees to prevailing parties in litigation. This practice, commonly referred to as the "American Rule," is followed by the Delaware courts. However, there are recognized exceptions to the American Rule, which invoke equitable principles that have been recognized as a matter of common law.... Delaware courts have awarded attorney's fees for bad faith when "parties have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims."

*Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506 (Del. 2005) quoting *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998).

The claims that CIGNEX initially asserted included payments that Lam made to third-party service providers — payments that CIGNEX did not even have a right to receive.  Faced with these baseless allegations, Lam had no choice but to defend itself and point out the fallacies of the allegations in the Complaint.  There was testimony from Lam at trial that CIGNEX was informed that the SkillDom invoice was paid by Lam, yet CIGNEX continued to press for payment of that invoice in the Pretrial Order and in a trial demonstrative, only dropping the claim in post-trial briefing when the trial made clear that the claim had no merit.  The Alfresco and SkillDom claims were not frivolous, *they were baseless*.  Certainly, those two invoices, together, do not make up the bulk of CIGNEX's claimed money damages, but those invoices were clearly asserted without basis.

In *Choupak v. Rifkin*, the Court found that the defendant acted in bad faith warranting an exception to the American Rule because, in part, he asserted a baseless claim.  The claims "were

frivolous because they depended on outright falsehoods." *Choupak v. Rivkin*, 2015 WL 1589610, at *22 (Del. Ch. Apr. 6, 2015).  In *Soterion Corp. v. Soteria Mezzanine Corp.*, the plaintiffs brought a claim involving malfeasance by a board of directors, which prompted the defendant to bring counterclaims for tortious interference.  *Soterion Corp. v. Soteria Mezzanine Corp.*, 2012 WL 5378251 (Del. Ch. Oct. 31, 2012).  The plaintiffs withdrew their claims prior to trial, but the tortious interference counterclaims remained and went to trial.  Defendants (counterclaim plaintiffs) lost at trial—*i.e.*, their counterclaim was unsuccessful.  However, the Court awarded them attorneys' fees in connection with the original complaint brought by plaintiffs, which, the Court found, had no basis.  *Id*. at *18 ("By filing a lawsuit the core allegations of which they knew to be false at the time they filed it, the Joneses and Soterion behaved in a manner that exemplifies the sort of bad faith conduct deserving of an award of attorneys' fees.").

In this instance, CIGNEX asserted baseless claims.  In the same way that the Court may decide to award attorneys' fees to a party because the opposing party asserted frivolous claims, the Court may decide to ***not*** award attorneys' fees to a party that was partly successful at trial but that also asserted baseless claims.

Justice and equity should also come into play here, and require consideration of the bigger picture, placing substance over form.  Lam paid CIGNEX $665,895 before it began testing CIGNEX's work and realized the website was not working, and CIGNEX was nowhere near delivering a website by the multiple and frequently moving deadlines that it promised.  According to the Statement of Work agreed to by the parties, CIGNEX's price for the project was $593,376.[7] At the moment that CIGNEX had paid $665,895, Lam had not received the updated MyLam.com

---

[7] Lam is aware that change requests increase costs; however, the larger point is that Lam had already invested a good deal of money into the project without receiving anything in return.

portal that it bargained for.  The Court has awarded CIGNEX an additional $232,039.71 on a "time and materials" basis.  Now CIGNEX is demanding attorneys' fees of $531,219.12 for a Complaint containing allegations that it did not and could not prove.  If the Court awards CIGNEX its attorneys' fees, including the pre- and post-judgment interest that CIGNEX is requesting, Lam will have to pay CIGNEX $1,513,106.20 for a job that it ***performed poorly, never completed, and Lam never accepted***.  Of course, this amount does not include the cost Lam incurred defending the lawsuit, or paying a different company to actually perform the work CIGNEX promised to complete.

This Court has discretion to award or not award attorneys' fees as justice and equity dictate.  Lam, respectfully, asserts that justice and equity dictate that, in this instance, the Court deny CIGNEX's Motion for Attorneys' Fees as it pertains to the award of attorneys' fees.

## VI.   The reasonableness of CIGNEX's attorneys' fees

Any analysis of the reasonableness of CIGNEX's attorneys' fees should be viewed through the lens of CIGNEX's allegations in the Complaint, and its shifting positions in this case, as facts came to light about what actually happened on the project.  In its Opening Brief, CIGNEX states, "[m]oreover, Cignex's litigation tactics were reasonable."  (Op. Br. 13.)  CIGNEX cites the *Dow Chemical Canada Inc. v. HRD Corp.* case, where the District Court reduced the fee award because of Dow Chemical's litigation tactics — particularly in discovery.  *See Dow Chem. Canada Inc. v. HRD Corp.*, 2013 WL 3942052, at *2 (D. Del. July 29, 2013).  Despite CIGNEX's claim in the Opening Brief, CIGNEX's litigation tactics were not reasonable.[8]

---

[8] Lam does not blame CIGNEX's counsel for these tactics, rather they derive from how CIGNEX itself changed its litigation strategy in the middle of the litigation to focus, not on performance, as alleged in the Complaint, but rather on being paid for the amount of time its people put into the job.  Also, CIGNEX's destruction of emails was not directed by its counsel.

As stated above, CIGNEX originally alleged that it "delivered the software as per Lam's requirement," and it "performed all of its obligations under the Agreement." (Compl. ¶¶ 9, 17). CIGNEX further alleged that, "[a]t no time did Lam indicate in writing or verbally that the software did not meet the agreed criteria." (Compl. ¶ 9). Lam, in response, was forced to approach the litigation based on these allegations.

In discovery, CIGNEX initially claimed each of the "sprints" was a "deliverable" which Lam accepted, and therefore was obligated to pay for. Then, when it became clear that sprints were never actually completed, and were failing testing conducted by Lam, CIGNEX pivoted away from that theory. It also became clear pretrial that CIGNEX had no right to payment on certain of the invoices for which it demanded payment. By the time trial arrived, it was clear that CIGNEX was not entitled to payment for invoices it had sued for, had missed delivery deadlines, had not completed the project, and that Lam had tested and objected to CIGNEX's non-functioning code throughout the project. At trial, CIGNEX claimed it was entitled to be paid on a "time and materials" basis, and was entitled to payment regardless of whether it actually delivered MyLam.com acceptable to Lam. In short, in this case, Lam was forced to chase a moving target, which made the litigation more drawn out, more expensive, and more difficult.

As for discovery, as discussed above, Lam filed a motion against CIGNEX seeking sanctions for spoliation of evidence. In *Dow Chemical*, the Court was influenced by three motions to compel granted against Dow to reduce the attorneys' fee awarded to Dow. *Dow Chem. Canada Inc.*, 2013 WL 3942052, at *2. There are parallels between *Dow Chemical* and this case where CIGNEX's discovery conduct led to more distrust and more costs on Lam's part.

CIGNEX's actions, from shifting theories of their case, to destroying communications from the individuals with actual personal knowledge of all the problems with the project, made litigating

the case more difficult than it needed to be and that, respectfully, should be reflected in the Court's decision to award attorneys' fees.

### VII.   Any pre- or post-judgment interest awarded should not be compounded and should not fluctuate

While Lam agrees that the Delaware legal rate of interest is the correct rate to apply if this Court is going to award pre- or post-judgment interest, Lam disagrees with the calculations provided by CIGNEX in its Opening Brief.

The basis for the legal rate of interest in Delaware is statutory.  According to 6 Del. C. § 2301(a):

> Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; …. Except as otherwise provided in this Code, any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate including any surcharge thereon or the contract rate, whichever is less.

CIGNEX, in its Opening Brief cites to many cases in the Court of Chancery where the Court allowed for compounding interest – quarterly or otherwise.  However, those cases were cases involving some form of equitable relief.  This case involves a plain breach of contract.

The Delaware Court of Chancery explained why simple, as opposed to compound interest, is appropriate in legal as opposed to equitable causes: "The Court has broad equitable discretion to fix a rate, but 'where a damages claim ... [is] "legal, rather than equitable, in nature," the statutory rate should be applied.' Here, there is no principled reason to depart from the legal rate. Additionally, the statute has been interpreted as providing for simple interest only."  *Branin v. Stein Roe Inv. Counsel, LLC*, 2015 WL 4710321, at *8 (Del. Ch. July 31, 2015); *see also Brandin v. Gottlieb*, 2000 WL 1005954, at *28 (Del. Ch. July 13, 2000) ("Delaware's legal rate of interest statute, 6 *Del. C.* § 2301(a), has been interpreted as providing for simple interest only."); *Ryan v.*

16

*Tad's Enterprises, Inc.*, 709 A.2d 682, 705 (Del. Ch. 1996) ("Because the plaintiffs have not established that the circumstances of this particular case warrants [sic] a departure from the normal practice of awarding simple interest …, the prejudgment interest rate will be based on the simple interest rate of 11% that prevailed as of May, 1988."), aff'd, 693 A.2d 1082 (Del. 1997).

The Delaware Supreme Court has stated, "Delaware courts have traditionally disfavored compound interest." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 173 (Del. 2002); see also *Weinberger v. UOP, Inc.*, 517 A.2d 653, 657 (Del. Ch. 1986) ("Although compound interest may be the type of interest generally obtained by investors, it is not generally favored in the law."). This Court, interpreting Delaware law on the issue, has flatly stated, "What the plaintiffs actually seek is interest on interest, i.e., compound interest, which is not permitted under Delaware law." *Devex Corp. v. Gen. Motors Corp.*, 569 F. Supp. 1354, 1367–68 (D. Del.), *supplemented,* 577 F. Supp. 429 (D. Del. 1983), and *aff'd,* 749 F.2d 1020 (3d Cir. 1984).

Based on the case law, simple interest at the Delaware legal rate for both pre- and post-judgment interest is appropriate.

Moreover, the rate should not fluctuate. It appears, from Exhibit A attached to the Opening Brief, that CIGNEX has adjusted the interest rate quarterly to reflect changes in the Federal Discount rate. However, CIGNEX has provided no legal basis for this "fluctuating" interest rate. The Delaware statute does not provide for a fluctuating rate. Instead, it states, "any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate including any surcharge thereon or the contract rate, whichever is less." It does not say that the legal rate should be adjusted to reflect changes in the discount rate. The Delaware Superior Court, interpreting the issue in a breach of contract case, held that "the rate of interest is

17

calculated according to the Federal Reserve discount rate as of the date of commencement of interest liability ***and it remains fixed at that rate***." *Rollins Envtl. Servs., Inc. v. WSMW Indus., Inc.*, 426 A.2d 1363, 1368 (Del. Super. 1980) (emphasis added); *see also Enzo Life Scis., Inc. v. Adipogen Corp.*, 82 F. Supp. 3d 568, 607 (D. Del. 2015) (setting the applicable Delaware pre-judgment interest rate at 5.5%).

Finally, in its conclusion, CIGNEX has asked for post-judgment interest on pre-judgment interest. CIGNEX has not stated the basis for this relief, and this Court, in a similar circumstance, refused to grant such relief. *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 410 (Del. 1988) (refusing to grant post-judgment interest on pre-judgment interest because the party seeking it cited "no Delaware authority for its position" and "Delaware courts have traditionally disfavored the practice of compounding interest, and we see no reason to depart from that rule here").

## VIII.   CIGNEX has violated the Mediation Order in this case

The Court has asked whether there is a dispute that settlement offers may properly be used to address attorneys' fees in this case without running afoul of Federal Rule of Evidence 408; if settlement offers may be used, what those offers were (with any supporting evidence); and if there has been a mediator's proposal in this case, whether that is considered a settlement offer within the meaning of Paragraph 19 of the Agreement and, if so, what that amount was. In its Opening Brief, CIGNEX provides case law support for the proposition that settlement offers may be used to address the attorneys' fees issue in this case without running afoul of Federal Rule of Evidence 408. However, Lam contends that all of the settlement discussions between the parties are confidential, and were held pursuant to Court Order, and that ***none*** of the settlement discussions between the parties described in the Opening Brief or in the Declaration of Divya Kumat, Esq. may be used in this proceeding or any proceeding.

On December 20, 2017, this Court issued the Order Governing Mediation Conferences and Mediation Statements (the "Mediation Order") [D.I. 26].  Paragraph 9 of the Mediation Order concerns confidentiality and it states: "The contents of the mediation statements and the mediation conference discussions, including any resolution or settlement, shall remain confidential, shall not be used in the present litigation nor any other litigation (whether presently pending or filed in the future), and shall not be construed as nor constitute an admission. Breach of this provision shall subject the violator to sanctions."  The Mediation Order does not reference nor does it subject its confidentiality strictures to Federal Rule of Evidence 408.  The case law cited by CIGNEX in its Opening Brief is non-responsive to the issue involved here—*i.e.*, use of information discussed in mediation.  The Mediation Order is clear, any of the discussions that took place in mediation shall not be used in this litigation or any other litigation and the Motion for Attorneys' Fees is part of this litigation.  The Mediator's proposal described in CIGNEX's Opening Brief was based on Court-ordered mediation statements and mediation discussions — it was clearly part of the mediation process and thus covered under the confidentiality provision of the Mediation Order.  Paragraphs 16 and 17 of Ms. Kumat's Declaration violate the Mediation Order.  The sections of the Opening Brief addressing the settlement offers – including amounts – made in connection with the mediation also violate the Mediation Order.  (Op. Br. 10-12).

The fee-shifting provision in the MSA does reference settlement offers and the effect those offers may have on an award of attorneys' fees.  As CIGNEX has pointed out in its Opening Brief, settlement offers under Rule 408 may be admissible for purposes of resolving questions regarding fee shifting.  If, in this case, Lam had offered to settle this matter outside of the mediation process, that offer may be admissible and the Court may reference it in its determination of an award of attorneys' fees.  That did not occur here.  Any communications of settlement were made in

connection with the mediation and, as such, are covered under the confidentiality provision in the Mediation Order.

The Mediation Order states that breach of confidentiality "shall subject the violator to sanctions." Lam respectfully suggests that appropriate sanctions in this case would be to strike the portions of the Opening Brief referring to mediation and settlement offers made in connection with mediation and denial of the Motion for Attorneys' Fees.

## CONCLUSION

For the foregoing reasons, Lam respectfully requests that the Court deny CIGNEX's Motion for Attorneys' Fees.

Dated: June 2, 2020                              CROSS & SIMON, LLC

*/s/ David G. Holmes*
David G. Holmes (No. 4718)
Christopher P. Simon (No. 3697)
Michael L. Vild (No. 3042)
1105 North Market Street, Suite 901
P.O. Box 1380
Wilmington, Delaware 19899-1380
(302) 777-4200
(302) 777-4224 facsimile

*Attorneys for Lam Research Corporation*
*Defendant/Counterclaim Plaintiff*