IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIGNEX DATAMATICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 17-320 (MN) |
| | ) |
| LAM RESEARCH CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Theodore A. Kittila, James G. McMillan, III, HALLORAN FARKAS + KITTILA LLP, Wilmington, DE – attorneys for Plaintiff

Christopher P. Simon, David G. Holmes, CROSS & SIMON, LLC, Wilmington, DE – attorneys for Defendant

September 29, 2022
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the renewed motion of Plaintiff CIGNEX Datamatics, Inc. ("Plaintiff" or "CIGNEX") for an award of attorneys' fees. (D.I. 146).[1] For the reasons set forth below, CIGNEX's motion is DENIED. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 54(d) of the Federal Rules of Civil Procedure.

## I. BACKGROUND[2]

This case involved a dispute between CIGNEX and Defendant Lam Research Corporation ("Defendant" or "Lam") over a contract relating to software development services that CIGNEX was to provide to Lam ("the Agreement"). After a three-day bench trial, the Court found that CIGNEX had proven that Lam breached the Agreement by failing to pay for certain services rendered and, further, that Lam failed to prove that CIGNEX breached the Agreement, the covenant of good faith and fair dealing or that CIGNEX was unjustly enriched. (*See* D.I. 126; *see also* D.I. 127). On May 6, 2020, the Court entered judgment in favor of CIGNEX and against Lam in the amount of $232,039.71 (D.I. 129) and, on January 21, 2021, the Court amended its judgment to award pre- and post-judgment interest (D.I. 145). The Court of Appeals for the Third Circuit affirmed the judgment. (*See* D.I. 149). After the Third Circuit had issued its opinion but before the mandate issued, CIGNEX filed a renewed motion for attorneys' fees based on the Agreement's provision awarding reasonable fees to the prevailing party. (*See* D.I. 146 & 147).

---

[1] CIGNEX requested attorneys' fees in its post-trial motion seeking pre- and post-judgment interest, but the Court denied the request for fees with leave to renew after the then-pending appeal. (*See* D.I. 141 at 7:20-23).

[2] A more detailed recitation of the procedural history of this case may be found in the Court's post-trial opinion (D.I. 126) and opinion on Lam's motion for a finding of spoliation and for sanctions (D.I. 100).

CIGNEX requests $593,142.85 in attorneys' fees and other expenses.  (*See* D.I. 147 at 19). In support of the amount requested, CIGNEX provided the Court with a declaration from Divya Kumat, former in-house General Counsel for CIGNEX and now Authorized Representative for CIGNEX.  (*See* D.I. 148).  Lam opposes the award of any fees.  (D.I. 151).  Briefing on the motion was completed on November 8, 2021.  (D.I. 152).

## II. LEGAL STANDARDS

"Under the American Rule and Delaware law, litigants are normally responsible for paying their own litigation costs."  *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007).  One exception to this rule may be found in litigation arising from contracts containing fee-shifting provisions.  *Id.*  A court may award a prevailing party its reasonable costs and fees in connection with litigating a contract dispute when the parties have so agreed by the terms of that contract.  *Id.*  In that case, the court's task is to determine whether the requested costs and fees are reasonable.

In assessing the reasonableness of attorneys' fees requested in contract litigation,[3] Delaware courts consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct:  "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the

---

[3]  The parties do not dispute that Delaware law recognizes fee-shifting contract provisions as enforceable or that the Agreement contains such a provision in Paragraph 19.  (PTX-44 ¶ 19).  CIGNEX acknowledges the use of the Rules of Professional Conduct in assessing reasonableness but intimates the factors may not be applicable in contractual fee-shifting cases.  (*See* D.I. 147 at 13).  CIGNEX cites nothing to suggest that Delaware law imposes some other standard in cases involving fee disputes arising out of contracts.  And CIGNEX ultimately presents the individual factors set forth in the Rules of Professional Conduct.

circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 1.5(a); *see also Mahani*, 935 A.2d at 245-46.  Additionally, in reviewing a request for attorneys' fees, a court should also ask whether the amount of time devoted to litigation was "excessive, redundant, duplicative or otherwise unnecessary." *Mahani*, 935 A.2d at 247-48.

### III. DISCUSSION

The Agreement between the parties contemplates reasonable attorneys' fees to the prevailing party in either litigation or arbitration:

> In any judicial or arbitration proceeding concerning a dispute relating to or arising out of this Agreement, the prevailing party is entitled to recover all reasonable expenses associated with such proceeding (including without limitation reasonable costs and fees of attorneys or other professionals), except that (i) if the prevailing party has at any time refused a settlement offer pertaining to such dispute which is equal to or greater than the prevailing party's actual recovery determined in such judicial or arbitration proceeding, then no such fees or costs will be awarded, and (ii) if the prevailing party has at any time refused a settlement offer pertaining to such dispute which is less than the prevailing party's actual recovery determined in such judicial or arbitration proceeding, then an such fees or costs associated with recovering the difference between the refused settlement offer and the actual recovery must bear a reasonable relation to such difference.

(PTX-44 ¶ 19).  There is no dispute that the present case qualifies as a judicial proceeding relating to the parties' Agreement such that reasonable attorneys' fees may be available to the prevailing party.  Lam disputes, however, that CIGNEX is a prevailing party such that attorneys' fees should be available.  Indeed, Lam's opposition to CIGNEX's fee motion focuses heavily on the prevailing party issue.  (*See* D.I. 151 at 6-10).

3

### A. CIGNEX Is a Prevailing Party

In this case, CIGNEX asserted only one claim against Lam – a breach of contract claim. (*See generally* D.I. 1). Lam asserted a counterclaim for breach of contract, as well as counterclaims for bad faith breach of contract, breach of the duty of good faith and fair dealing and unjust enrichment. (*See* D.I. 8 at pgs. 10-14). At trial, CIGNEX prevailed on its breach of contract claim against Lam, and Lam failed to prove its breach of contract claim against CIGNEX. In particular, CIGNEX proved its breach of contract claim as related to services rendered under CR-1, CR-2 and CR-3 (but not CR-4 and CR-5). (*See* D.I. 126 at 18-25). Although CIGNEX sought $434,096.71 in damages for its one claim (*see* D.I. 1 ¶¶ 15-19), based on the Court's post-trial opinion, CIGNEX was awarded $232,039.71 in damages plus $60,564.56 in pre-judgment interest, as well as post-judgment interest (*see* D.I. 145). Those damages correspond to amounts due under CR-1, CR-2 and CR-3. CIGNEX also prevailed on all counterclaims asserted by Lam. (D.I. 145 ¶ 1). Although Lam was not successful in proving any of its counterclaims, it was able to reduce the amount of damages available to CIGNEX by $58,000 through summary judgment. (D.I. 94 at 6).

Lam's main argument against any award of fees is that CIGNEX should not be considered a prevailing party in this litigation because it was not a prevailing party on all or even most issues. In Lam's view, CIGNEX only recovered money damages under two of six invoices at issue, meaning that "CIGNEX failed to prevail on two-thirds of the invoices that formed the basis of its lawsuit." (D.I. 151 at 7). Moreover, CIGNEX's damages claim was reduced before trial by Lam's partial success on summary judgment. As such, according to Lam, because CIGNEX purportedly failed to recover two-thirds of its requested damages, it should not be considered a prevailing party at all and no attorneys' fees should be available. (*Id.*). The Court declines to follow Lam's approach because doing so would contravene precedent and the Agreement between the parties.

4

CIGNEX need not prevail on all or a majority of issues for attorneys' fees to be available in this case. Neither Delaware precedent nor the Agreement itself requires as much. In contractual fee-shifting cases, the relevant standard for prevailing party status is predominance in the litigation unless the parties agree otherwise in the contract. *See, e.g.*, *Comrie v. Enterasys Networks, Inc.*, No. 19254, 2004 WL 936505, at *2 (Del. Ch. Apr. 27, 2004) ("The language of the Agreement, itself the product of long negotiation by sophisticated parties and attorneys, clearly provides for an all-or-nothing approach in identifying the 'prevailing party.' . . . That traditional application is an all-or-nothing approach involving an inquiry into which party predominated in the litigation."), *aff'd*, 864 A.2d 929 (Del. 2004); *Brandin v. Gottlieb*, No. 14819, 2000 WL 1005954, at *28 (Del. Ch. July 13, 2000) ("Having chosen the common term 'prevailing party,' the parties can be presumed to have intended that that term would be applied by the court as it has traditionally done so. And under any traditional application of the term, Jill's predominance in the litigation entitles her to that appellation."); *see also Praxis Energy Agents Pte. Ltd. v. M/V Pebble Beach*, No. 17-559-LPS, 2021 WL 3145610, at *2 (D. Del. July 26, 2021) ("The Terms and Conditions provide that '***the*** prevailing party' – indicating a singular analysis is required to determine who, overall, prevailed – 'shall have the right to recover from the losing party its reasonable costs and attorneys' fees ***incurred in such proceeding***,' without delineating between those fees and costs incurred in the portions of the proceeding on which Defendant prevailed and those on which it did not." (emphases in original)), *aff'd*, No. 21-2809 (3d Cir. Sept. 27, 2022); *Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 697 (D. Del. 2013) ("Because the fee-shifting provision contains no qualifying language, the court will apply it in an all-or-nothing manner.").

Here, CIGNEX and Lam agreed to a fee-shifting provision that did not tie the amount of recoverable fees to the degree of success obtained in litigation: "In any judicial or arbitration

5

proceeding concerning a dispute relating to or arising out of this Agreement, the prevailing party is entitled to recover all reasonable expenses associated with such proceeding (including without limitation reasonable costs and fees of attorneys or other professionals) . . . ."  (PTX-44 ¶ 19). Rather, the Agreement allows CIGNEX to recover *all* reasonable expenses (including attorneys' fees) if it is the prevailing party in this litigation.  As with other courts that have addressed this issue, this Court finds that a traditional application of the term "prevailing party" is appropriate here, especially because the Agreement does not indicate any other meaning was intended.

Delaware courts generally use the predominance standard in determining whether a party is the prevailing party.  *Vianix Delaware LLC v. Nuance Commc'ns, Inc.*, No. 3801-VCP, 2010 WL 3221898, at *28 (Del. Ch. Aug. 13, 2010).  Under the predominance standard, the Court must look at who prevailed on the main issue in the case – here, that issue was whether the Agreement was a "time and materials" contract that obligated Lam to pay and that Lam breached by failing to pay.  *See Comrie*, 2004 WL 5366650, at *2 ("The main issue in this case – and the issue upon which it can be determined the plaintiffs predominated in litigation – is the interpretation of the Agreement . . . ."); *see also W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, No. 2742-VCN, 2009 WL 458779, at *9 (Del. Ch. Feb. 23, 2009) ("Whether West Willow is entitled to fees reasonably incurred will be determined in reference to the litigation as a whole because the clause only contemplates awarding fees to the prevailing party in an 'action.'  There can be no question West Willow prevailed in this matter.  It prevailed on the substantive breach of contract claim."). On the issue of contract interpretation (and breach), CIGNEX prevailed.  Indeed, CIGNEX prevailed on its breach of contract claim and on all counterclaims asserted by Lam.  Although CIGNEX did not recover the full amount of damages sought, it recovered over half that amount,

6

and damages were only "subsidiary to contract interpretation." *W. Willow-Bay*, 2009 WL 458779, at *9; *see also Comrie*, 2004 WL 5366650, at *3. CIGNEX is the prevailing party in this litigation.

      **B.**      **CIGNEX Has Failed to Prove Its Requested Fees Are Reasonable**

Having found that CIGNEX is a prevailing party within the meaning of the Agreement and Delaware law, the Court must now turn to the factors set forth in the Delaware Lawyers' Rules of Professional Conduct to assess whether the fees requested by CIGNEX are reasonable. It is noteworthy, however, that neither side offered any meaningful discussion or analysis of these factors or of their application to the facts of this case. (*Compare* D.I. 147 at 14-19 (CIGNEX presenting the proper factors but failing to apply them), *with* D.I. 151 at 15-16 (Lam failing to even raise the factors or relevant authority in discussing reasonableness of the requested fees)). This lack of effort – coupled with the absence of legitimate supporting evidence – has made the Court's job in reviewing the reasonableness of the requested fees exceedingly difficult.

      1.      <u>Time and Novelty</u>

CIGNEX's claim was a straightforward breach of contract claim, the resolution of which largely turned on whether the Agreement was a "time and materials" contract, as opposed to a "fixed price" contract that obligated CIGNEX to complete the project to receive compensation. (*See* D.I. 126 at 18-25). Answering that question did not prove especially difficult given that several Lam witnesses conceded that the contract was a "time and materials" contract. (*See id.* at 19). And Lam's counterclaims turned on whether CIGNEX's affirmative claim prevailed. Overall, this was not a complex case. Indeed, neither side called any experts at trial; instead, the parties relied on fact witnesses and a handful of trial exhibits to support their respective claims.

Although this matter was straightforward, the Court has no indication of how much time CIGNEX's various attorneys spent working on this case. Neither the brief nor the accompanying

7

declaration includes any summation (or any number) of hours worked by each (or any) attorney. (*See generally* D.I. 147 & 148). Even in the purportedly "detailed summary of all invoices paid to date" attached to CIGNEX's declaration, there is not a single time entry or assertion of how much time each attorney billed to this matter. (*See* D.I. 148, Ex. A at pgs. 1-3 of 3; *see also* D.I. 148 ¶ 4 ("I have attached as Exhibit A hereto a detailed summary of all invoices paid to date in this litigation.")). The Court has thus no idea how much time this simple breach of contract case required of the many attorneys working on it.

### 2. Employment Preclusion

On this factor, CIGNEX offered a single – and bald – assertion from its Authorized Representative: "It was apparent to me that the acceptance of the particular employment was likely to preclude other employment by the attorneys." (D.I. 148 ¶ 15). No other information was submitted to the Court regarding this factor. In fact, CIGNEX did not bother to address this factor in its briefing. Stated differently, there is no support in the record for the Court to conclude that working on this case precluded other employment. Indeed, given the lack of complexity (and relatively quiet docket) in this case, the Court finds it hard to believe that this case prevented CIGNEX's attorneys from handling other matters at the same time.[4]

### 3. Fees Customarily Charged

Hourly rates are about the only information that CIGNEX did provide in connection with its attorneys' fee motion. The Court will address the hourly rates of each of the five firms involved in this case. (*See* D.I. 148 ¶¶ 5, 6, 7 & 8).

---

[4] In fact, the Court suspects that it would be able to find active cases involving many of the attorneys proceeding at the same time that this case was in progress.

The first firm involved, Honigman Miller Schwartz and Cohn LLP, is based in Detroit, Michigan and it apparently provided pre-filing legal advice to CIGNEX. (D.I. 148 ¶ 5). According to CIGNEX's Authorized Representative, that firm charged $545 per hour for the services they provided. The problem facing the Court, however, is that there is no indication of whether this hourly rate is for a partner or an associate (or someone else). CIGNEX does not even provide the name of the individual(s) performing the work. The Court is therefore unable to determine whether the $545 hourly rate for Honigman Miller Schwartz and Cohn LLP is reasonable.

The next two firms involved were Kegler Brown Hill & Ritter ("Kegler Brown"), which is based in Columbus, Ohio and served as CIGNEX's lead counsel until late 2018, and Morris James LLP, who served as co-lead and Delaware counsel during that time. (*See* D.I. 148 ¶ 6). At Kegler Brown's discounted rates, senior partners billed at $400 per hour, partners billed at $313 per hour, associates billed at $257 per hour and paralegals billed at $160 per hour. (*Id.*). At Morris James's discounted rates, partners billed at $440 per hour, associates billed at $375 per hour and paralegals billed at $215 per hour. (*Id.*). In the Court's experience, these hourly rates for partners, associates and paralegals are not excessive in Delaware. That being said, CIGNEX again fails to provide the Court with the identity of the particular attorneys involved so that the Court can more fully assess whether the hourly rates are reasonable in light of the attorneys' experience levels.

The fourth firm involved was Royzz & Co. of Mumbai, India, which apparently provided "legal advice related to this litigation" sometime in May 2018. (*See* D.I. 148 ¶ 7). There is no indication of who performed that work (or even if the work was done by an attorney) and whether any hourly rate was used. Instead, CIGNEX apparently paid a "negotiated fee" of $2,936.42. (*Id.*). The Court is unable to conclude that any of these Royzz & Co. fees are reasonable.

The last firm, Halloran Farkas + Kittila LLP ("Halloran Farkas"), became involved in September 2018 and replaced Kegler Brown and Morris James. (D.I. 148 ¶ 8). Still CIGNEX's counsel in this matter today, Halloran Farkas billed at a discounted rate of $475 per hour for partners and $100 per hour for paralegals. (*Id.*). These hourly rates are reasonable in Delaware. Although the Court knows the identity of the particular attorneys who tried the case, CIGNEX again fails to provide the Court with the identity of all the individuals involved so that the Court can more fully evaluated the hourly rates in light of each individual's experience.

In sum, the Court cannot conclude that the hourly rates used by Honigman Miller Schwartz and Cohn LLP and Royzz & Co. are reasonable. Although CIGNEX provided no evidence of experience level for the individuals involved from Kegler Brown, Morris James and Halloran Farkas, the hourly rates for partners, associates and paralegals generally appear reasonable for the Delaware market.

    4.  <u>Amount Involved and Results Obtained</u>

CIGNEX asserted one claim for breach of contract, ultimately seeking $434,096.71. (*See* D.I. 1 ¶¶ 15-19). The Court partially granted summary judgment to Lam on one damages issue and reduced the potential damages by $58,000. (D.I. 94 at 6). At trial, CIGNEX prevailed on its breach of contract claim as related to services rendered under CR-1, CR-2 and CR-3. (*See* D.I. 126 at 18-23). CIGNEX also prevailed on all counterclaims asserted by Lam. (D.I. 145 ¶ 1). The Court awarded $232,039.71 in damages plus $60,564.56 in pre-judgment interest, and post-judgment interest was awarded as well. (*See generally id.*). Thus, CIGNEX prevailed on the merits of its breach of contract claim but did not obtain all damages sought. In the end, CIGNEX received a little over half of what it sought in this litigation – a mediocre result.

### 5. Time Limitations

There is no evidence relating to this factor, which does not appear relevant in this case. This factor does not weigh in favor of or against the reasonableness of CIGNEX's requested fees.

### 6. Nature and Length of Relationship with Client

The Court has struggled with this factor as applied to this case. On the one hand, there is no record evidence as to the nature and length of the professional relationship present here. That being said, the Court suspects there were historically some issues with the attorney-client relationships. Over the course of litigation, there were at least five different law firms involved in this action, which again was a simple breach of contract case. (*See* D.I. 148 ¶¶ 5, 6, 7 & 8). At one point, CIGNEX apparently attempted to obtain legal advice relating to this litigation from a law firm in India (where CIGNEX has offices). (*Id.* ¶ 7). Only after two years and four law firms did CIGNEX land on its final set of attorneys that would ultimately try this case. (*Id.* ¶ 11). The Court finds that this factor does not weigh in favor of the reasonableness of any requested fees.

### 7. Experience and Reputation of the Attorneys

Although the CIGNEX attorneys who tried this case are experienced members of the Delaware Bar (*see* D.I. 118 at 2:12-14), the Court is unable to conclude anything about the other attorneys and legal professionals involved. The main impediment to assessing this factor is the fact that CIGNEX has not identified the individuals at each of the various firms who performed work on this case. (*See* D.I. 148 ¶¶ 5, 6, 7 & 8 (listing firms and generic titles for individuals performing work but providing no names); *see also id.*, Ex. A at pgs. 1-3 of 3 (no individual names listed on summary of charges)). The Court cannot possibly evaluate the experience, reputation and skill level of unknown attorneys or other legal professionals. For example, as to the first firm involved – before this action was filed – there is no indication whether partners or associates

11

provided legal advice regarding the underlying dispute. (*Id.* ¶ 5). The same is true with Royzz & Co. of Mumbai, India – the Court has been provided nothing as to who from that firm performed any work on this matter or the experience and reputation those individuals possess. (*See* D.I. 148 ¶ 7 & Ex. A at pg. 3 of 3). In fact, CIGNEX has failed to even offer evidence that ***attorneys*** at either firm were the ones performing the work. The Court cannot conclude that this factor supports finding any of the requested fees reasonable.

        8.        <u>Whether Fee is Fixed or Contingent</u>

In this case, the fees were based on hourly rates rather than any contingency basis.

Having applied each factor to the evidence here, the Court is left puzzled as to the contents of CIGNEX's request for attorneys' fees, particularly given that this is CIGNEX's second attempt at filing its fees motion. CIGNEX has provided almost no evidence supporting the reasonableness of any attorneys' fees requested. In addition to the many factors from the Delaware Lawyers' Rules of Professional Conduct weighing against CIGNEX, the Court has no information regarding how much time CIGNEX attorneys spent on this case. One would think that a party seeking its attorneys' fees would provide the Court with the number of hours that said attorneys spent working on the case. Apparently not. But this failure is particularly detrimental to CIGNEX's motion because, after evaluating the above factors, the Court asks whether the amount of time devoted to litigation was "excessive, redundant, duplicative or otherwise unnecessary." *Mahani*, 935 A.2d at 247-48. The Court is obviously unable to do so here.

In the end, the Court is only able to conclude that some of CIGNEX's requested attorneys' fees are ***un***reasonable, with the remainder being unsupported as reasonable. As to Royzz & Co. of Mumbai, India, the Court is left in the dark as to why an Indian firm was consulted in the middle of U.S. litigation between two U.S. companies involving a U.S. contract. (*See* D.I. 148 ¶ 7 & Ex.

A at pg. 3 of 3). Lacking any satisfactory explanation, the Court finds that none of the $2,936.42 paid to Royzz & Co. is reasonable. Similarly, because CIGNEX has not provided evidence as to the reasonableness of the hourly rates (or hours) of Honigman Miller Schwartz and Cohn LLP – or even that attorneys performed the work – the Court cannot find the $4,938.42 paid to be reasonable. (*See* D.I. 148 ¶ 5 & Ex. A at pg. 1 of 3). And as to the remainder of the attorneys' fees requested by CIGNEX, the Court is wholly unable to determine whether – or to what extent – the requested fees are reasonable. Under the circumstances and based on the evidence provided, the Court believes that ***allowing*** any of the remaining requested fees would be an abuse of discretion.[5]

Finally, the Court will briefly address costs under Rule 54(d)(1). CIGNEX has not filed a bill of costs, and there is no separate request for costs in CIGNEX's motion or in the supporting documentation. Although there is reference in the declaration to Wilcox and Fetzer (a court reporting service), the only information provided is three dates, the description "Legal Fees : Matter : Lam Research" and the amount paid ($4,870.00). (D.I. 148, Ex. A at pg. 3 of 3). Without a description of what Wilcox and Fetzer did to receive that $4,870.40, the Court is unable to determine whether that sum (or any portion of it) is a taxable cost that CIGNEX should be allowed to recover. No costs for Wilcox and Fetzer work will be allowed. To the extent that CIGNEX had planned on submitting a bill of costs after disposition of this motion, that was an error. *See* D. Del. L.R. 54.1(a)(1) ("The [prevailing] party shall, within 14 days after the time for appeal has expired or within 14 days after the issuance of the mandate of the appellate court, file a bill of costs. Failure

---

[5] This is true even for Halloran Farkas – which seemed to have reasonable hourly rates – because the Court has no indication of how many hours the attorneys spent on this case. Nor any indication of how many hours paralegals spent on the case. Indeed, the Court has no indication of how many individuals staffed this case. In fact, not having the number of hours spent on this matter means that the Court cannot even check CIGNEX's math on the amount of fees requested for Halloran Farkas services (among others).

to comply with the time limitations of this Rule shall constitute a waiver of costs, unless the Court otherwise orders or counsel are able to agree on the payment of costs."). CIGNEX filed no bill of costs within fourteen days of the issuance of the mandate and it is too late to do so now.

## IV.      CONCLUSION

For the foregoing reasons, CIGNEX's renewed motion for attorneys' fees is DENIED. An appropriate order will follow.

14